**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

|  |  |
|---|---|
| DAVID CHRISTENSON and ANNIKEN PROSSER<br><br>     *Plaintiffs,*<br><br>     v.<br><br>ALEX AZAR II, in his official capacity as the Secretary of the Department of Health and Human Services.<br><br>     *Defendant.* | Case No. 20-194-WCG |

**PLAINTIFFS' COMBINED REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.      DISCUSSION ........................................................................................................................ 1

   A.   REPLY ON MR. CHRISTENSON' AND MRS. PROSSER'S MOTION FOR SUMMARY JUDGMENT ................ 2

        1.   *Collateral Estoppel is Based on Final Decisions* .............................................................. 2

        2.   *The Same Issues Were At Stake* ......................................................................................... 4

        3.   *The Same Issues Were Actually Litigated* ......................................................................... 5

        4.   *The Secretary Was Fully Represented* ............................................................................... 6

   B.   CORRECTION OF ERRORS/INCOMPLETE STATEMENTS OF FACT ........................................................ 7

        1.   *The Secretary's Comments Regarding Pending ALJ Appeals* ............................................ 7

        2.   *The Secretary's Comments Regarding LCDs* .................................................................... 9

        3.   *The Secretary's Comments Regarding Mr. Christenson, Mrs. Prosser and Procedure Below* ............ 10

        4.   *The Secretary's "Future Claims" and Revised LCD Comments* ...................................... 11

   C.   STANDARD OF REVIEW ................................................................................................................ 12

   D.   THE SECRETARY'S LEGAL ARGUMENTS INDEPENDENT OF MEDICARE REGARDING COLLATERAL ESTOPPEL ................................................................................................................................ 14

        1.   *The Secretary's Simultaneous But Inconsistent Positions Regarding Collateral Estoppel in Medicare Cases* .......................................................................................................... 14

        2.   *The Supreme Court Has Affirmed the Use of Offensive Collateral Estoppel Against the United States* ...................................................................................................................... 15

        3.   *The Secretary's Confusion Regarding Mutual and Non-Mutual Collateral Estoppel* ......... 17

        4.   *The Secretary's Erroneous Comments Regarding "Precedential" Decisions and Collateral Estoppel* 19

        5.   *The Secretary's Appropriations Clause Argument* .......................................................... 20

   E.   THE SECRETARY'S LEGAL CLAIMS SPECIFIC TO MEDICARE REGARDING COLLATERAL ESTOPPEL .. 21

        1.   *De Novo Review* ............................................................................................................. 21

        2.   *Collateral Estoppel Is Not Contrary to Statutory Purpose, Will Not Frustrate Congressional Intent* .. 22

        3.   *Alleged Interference With Discretion to Implement the Medicare Statute* ........................... 23

        4.   *Alleged Lack of Incentive To Litigate* ............................................................................. 25

   F.   THE SECRETARY'S ERRONEOUS ASSERTION REGARDING THE CAUSES OF ACTION IN THIS CASE ...... 26

**II.     CONCLUSION**.................................................................................................................... **27**

Case 1:20-cv-00194-WCG   Filed 05/19/20   Page 3 of 34   Document 16

# TABLE OF AUTHORITIES

## Cases

*Abraham Lincoln Memorial Hospital v. Sebelius*,
  698 F.3d 536 (7th Cir. 2012)................................................................................28

*Adkins v. Nestle Purina Petcare Co.*,
  779 F.3d 481 (7th Cir. 2015).................................................................................14

*Alleghany General Hospital v. National Labor Relations Board*,
  608 F.2d 965 (3rd Cir. 1979) ................................................................................23

*American Hospital Assoc. v. Sebelius*,
  Case No. 14-cv-851-JEB, (D.D.C.) .......................................................................8

*Applied Medical Resources Corp. v. United States Surgical Corp.*,
  435 F.3d 1356 (Fed. Cir. 2006).............................................................................6

*B & B Hardware, Inc. v. Hargis Indust., Inc.*,
  575 U.S. 138 (2015)..............................................................................................30

*Bernstein v. Bankert*,
  733 F.3d 190 (7th Cir. 2013).................................................................................4

*Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Found.*,
  402 U.S. 313 (1971)..............................................................................................21

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)..............................................................................................13

*California Communities Against Toxics, v. EPA*,
  928 F.3d 1041 (D.C. Cir. 2019) ............................................................................6

*Columbus Regional Hospital v. F.E.M.A.*,
  708 F.3d 893 (7th Cir. 2013).................................................................................24

*Comcast Corp. v. F.C.C.*,
  526 F.3d 763 (D.C. Cir. 2008) ..............................................................................27

*Community Care Foundation v. Thompson*,
  318 F.3d 219 (D.C. Cir. 2003) ..............................................................................28

*Coney v. Smith*,
  738 F.2d 1199 (11th Cir. 1984) .............................................................................15

*County of Los Angeles v. Leavitt*,
  521 F.3d 1073 (9th Cir. 2008)...............................................................................28

*Cromwell v. County of Sac*,
  94 U.S. 351 (1876)................................................................................................20

*Devon Energy Corp. v. Kempthorne*,
  551 F.3d 1030 (D.C. Cir. 2008) ............................................................................27

*Donovan v. Fed. Clearing Die Casting Co.*,
  695 F.2d 1020 (7th Cir. 1982)...............................................................................6

*Downtown Medical Center/Comprehensive Health Care Clinic v. Bowen*,
  944 F.2d 756 (10th Cir. 1991) ...............................................................................24

*Freeman v. U.S. Dep't of Interior*,
  37 F.Supp.3d 313 (D.D.C. 2014) ..........................................................................29

*Friedman v. Sebelius*,
  686 F.3d 813 (D.C. Cir. 2012) ..............................................................................14

*General Elec. Capital Corp. v. Lease Resolution Corp.*,
   128 F.3d 1074 (7th Cir. 1997)........................................................................................15

*Grede v. FCStone*, LLC,
   867 F.3d 767 (7th Cir. 2017)..........................................................................................3

*Hanover Bank v. U.S.*,
   285 F.2d 455 (Ct. Cl. 1961)...........................................................................................20

*Heckler v. Community Health Services of Crawford County*,
   467 U.S. 51 (1984).........................................................................................................22

*Homan & Crimen, Inc. v. Harris*,
   626 F.2d 1201 (5th Cir. 1980)......................................................................................28

*Homemakers North Shore, Inc. v. Bowen*,
   832 F.2d 408 (7th Cir. 1987)........................................................................................28

*In re Grand Jury Proceedings*,
   347 F.3d 197 (7th Cir. 2003)..........................................................................................5

*In re: Deitz*,
   760 F.3d 1028 (9th Cir. 2014)......................................................................................25

*Int'l Rehab Sci. Inc. v. Sebelius*,
   688 F.3d 994 (9th Cir. 2012)........................................................................................29

*Interoceanica v. Sound Pilots*,
   107 F.3d 86 (2nd Cir. 1997)............................................................................................6

*Keokuk & W.R. Co. v. State of Missouri*,
   152 U.S. 301 (1894).......................................................................................................20

*Lewis v. Azar*,
   308 F.Supp.3d 573 (D. Mass. 2018)............................................................................16

*Lobo v. Celebrity Cruises, Inc.*,
   704 F.3d 882 (11th Cir. 2013).......................................................................................15

*Migra v. Warren City School District Board of Education*,
   465 U.S. 75 (1984).........................................................................................................18

*Miller Brewing Co. v. Joseph Schlitz Brewing Co.*,
   605 F.2d 990 (7th Cir. 1979)..........................................................................................3

*Monongahela Valley Hospital, Inc. v. Sullivan*,
   945 F.2d 576 (3rd Cir. 1991).........................................................................................24

*Montana v. U.S.*,
   440 U.S. 147 (1979)..................................................................................................4, 17

*Office of Personnel Management v. Richmond*,
   496 U.S. 414 (1990).......................................................................................................24

*Opoka v. INS*,
   94 F.3d 392 (7th Cir. 1996)...........................................................................................15

*Outram v. Morewood*,
   3 East, 346 (UK 1803)....................................................................................................20

*Parklane Hosiery Co., Inc. v. Shore*,
   439 U.S. 322 (1978)..................................................................................................21, 30

*Ross ex rel. Ross v. Bd of Educ. of Twp. High School Dist. 211*,
   486 F.3d 279 (7th Cir. 2007)..........................................................................................3

*Ross v. Meyer*,
   741 Fed.Appx. 56 (3rd Cir. 2018)................................................................................15

v

*Rucker v. Chater*,
    92 F.3d 492 (7th Cir. 1996)..........................................................................5

*Scooper Dooper, Inc., v. Kraftco Corp.*,
    494 F.2d 840 (3rd Cir. 1974) .....................................................................5

*U.S. v. County of Cook, Illinois*,
    167 F.3d 381 (7th Cir. 1999)......................................................................19

*U.S. v. Mendoza*,
    464 U.S. 154 (1984)...................................................................................17

*U.S. v. Moser*,
    266 U.S. 236 (1924)...................................................................................18

*U.S. v. Stauffer Chemical Co.*,
    464 U.S. 165 (1984)...................................................................................17

*U.S. v. Utah Construction Co.*,
    384 U.S. 394 (1966)............................................................................20, 27

## Statutes

28 U.S.C. § 1291...............................................................................................3

42 U.S.C. § 1395ff(b)(1)(A) ............................................................................12

42 U.S.C. § 1395ff(d)(2)(B) .....................................................................21, 22

42 U.S.C. § 405(g) ....................................................................................12, 13

## Other Authorities

M. BIGELOW, "A TREATISE ON THE LAW OF ESTOPPEL OR OF INCONTESTABLE RIGHTS",
    Chap. 2, § 2 (6th ed. 1913)........................................................................18

THE RESTATEMENT (SECOND) OF JUDGMENTS (1982) ...........................................16

## Rules

7th Cir. Rule 32.1(b)/(d) ..................................................................................20

FED.R.APP.P. 32.1(a) ........................................................................................20

## Regulations

42 C.F.R. § 405.1062(a) .....................................................................................9

42 C.F.R. § 405.1110 ..........................................................................................7

42 C.F.R. § 405.1817 ........................................................................................24

42 C.F.R. § 405.968(b)(2) ...................................................................................9

42 C.F.R. § 426 .................................................................................................11

42 C.F.R. §§ 426.420(b); 426.460(b).................................................................10

The Secretary's opposition and cross-motion[1] brings to mind a story by famed attorney and judge Irving Younger:

> A farmer has a patch of cabbages, his neighbor has a goat. One day, the goat breaks through the fence and eats the cabbages. The farmer brings suit for damages. The neighbor replies:
>> You had no cabbages.
>> If you had any cabbages, they were not eaten.
>> If your cabbages were eaten, it was not by a goat.
>> If your cabbages were eaten by a goat, it was not my goat.
>> And if it was my goat, he was insane!

The Secretary's opposition employs the same approach:

> Collateral estoppel against the government is unconstitutional.
> If it was constitutional, the Supreme Court has never done it.
> If the Supreme Court has done it, then the statute bars it in Medicare.
> If the statute does not bar it in Medicare, then the Secretary's ALJ are not fair to the Secretary.
> Etc. (for 31 pages).

The Secretary's cross-motion should be denied. Mr. Christenson' and Mrs. Prosser's motion should be granted and coverage ordered.

## I.    DISCUSSION

The bulk of the Secretary's opposition is founded on conflating mutual and non-mutual collateral estoppel, "precedential" and "collateral estoppel", "equitable estoppel" and "collateral estoppel", etc. Obviously, that approach is without merit. In addition, the Secretary's opposition relies on a series of factual assertions that simply are not true. Further, nearly all of the legal arguments offered by the Secretary in this case were contradicted in a brief filed by the Secretary in another case just 20 days before.

---

[1] Plaintiffs are filing a combined Reply on their Motion for Summary Judgment and Response to Defendant's Cross-Motion for Summary Judgment.

Along these same lines, the Secretary's cross-motion seeks to have the entire case dismissed if the Court declines to apply collateral estoppel and declines Plaintiffs' motion. The cross-motion reflects a fundamental misunderstanding of the procedural posture of this case and the basis for Plaintiffs' motion for summary judgment. Plaintiffs moved to apply collateral estoppel to be spared relitigating the same coverage issues that they had already won. If denied, Plaintiffs have not waived their other grounds for relief and, thus, remain entitled to prove their case on the merits once again.

The majority of the Secretary's opposition and cross-motion is directed to something other than refuting Mr. Christenson' and Mrs. Prosser's showing with regard to the elements of collateral estoppel. In the interest of clarity, the areas of disagreement regarding the elements of collateral estoppel are addressed before turning to the bulk of the Secretary's brief.

**A.      Reply On Mr. Christenson' and Mrs. Prosser's
         Motion for Summary Judgment**

With regard to the elements of collateral estoppel, as far as Plaintiffs can tell, the Secretary's disputes first appear on pages 25-28 of his opposition.

**1.      Collateral Estoppel is Based on Final Decisions**

With respect to Mrs. Prosser, the Secretary contends that collateral estoppel cannot apply because the final decisions on which collateral estoppel is based came out after the decision appealed in this case. Opp. at 25. While it is true that ALJ Figueroa' and Sardinia's decisions granting coverage issued after ALJ Grow's decision denying coverage, ALJ Woodyard's decision granting coverage came earlier than ALJ Grow's. That is, ALJ Woodyard's decision granting coverage issued on May 20, 2019, while ALJ Grow's decision denying coverage issued approximately one month later, on June 19, 2019. Thus, even accepting the Secretary's contention that appeals do not effect finality and only the order of initial decision matters, ALJ

Woodyard's decision would still form the basis for collateral estoppel against ALJ Grow's later decision.

Nevertheless, the Secretary is wrong on the law. In *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990 (7th Cir. 1979), the Court held: "To be 'final' for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment." Simply applying that standard, ALJ Woodyard', Figueroa', and Sardinia's decisions are final. The Secretary did not appeal them and, as a result, they are not subject to reversal or amendment. By contrast, ALJ Grow's decision is not final because Mrs. Prosser appealed it and the decision is subject to reversal or amendment. Indeed, that is the very purpose of this case.

The Secretary's citation to *Ross ex rel. Ross v. Bd of Educ. of Twp. High School Dist. 211*, 486 F.3d 279 (7th Cir. 2007) (Opp. at 25) is inapposite. That case concerns "finality" under 28 U.S.C. § 1291 (*i.e.*, when a district court decision is "final" for the purposes of allowing appellate review). It has long been recognized that "finality" for § 1291 and "finality" for collateral estoppel purposes are different. *See, e.g., Grede v. FCStone*, LLC, 867 F.3d 767, 778 (7th Cir. 2017) ("finality for collateral estoppel is not the same as that required to appeal under 28 U.S.C. § 1291") (internal citations and quotations omitted). Indeed, because of their different purposes, a decision that is not "final" for the purposes of § 1291, *may be final enough* to support collateral estoppel. Simultaneously, a decision that is "final" for the purposes of § 1291 *may not be final enough* to support collateral estoppel.

In short, the decisions of ALJs Woodyard, Figueroa, and Sardinias are final while the decision of ALJ Grow is not. As noted in Plaintiffs' opening papers, where there is parallel/concurrent litigation, whichever decision reaches finality first may have collateral

estoppel effect in the ongoing litigation, even if earlier filed.  Mot. at 2.  Accordingly, the Secretary is collaterally estopped from challenging the facts/issues decided in ALJ Woodyard, Figueroa, and Sardinias' decisions.

This Court may rest its decision for Mrs. Prosser on the Woodyard, Figueroa, and Sardinias' opinions or may avoid the issue by relying solely on ALJ Woodyard's opinion.

### 2.    The Same Issues Were At Stake

Because each of the ALJ' decisions covers particular months of treatment, the Secretary alleges that the issues in the decisions on which collateral estoppel is based are not the same as in the decisions being appealed.  Opp. at 26.  That proposition should be rejected outright.

It is well settled that the test for determining whether facts/issues are the same between two decisions is "materiality."  That is, facts/issues are the same unless they are materially different with respect to the conclusions reached (*i.e.*, "changed circumstances").  *See, e.g., Montana v. U.S.*, 440 U.S. 147, 159 (1979) ("changes in facts essential to a judgment will render collateral estoppel inapplicable"); *Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2013) ("identical in all material aspects"); *Scooper Dooper, Inc., v. Kraftco Corp.*, 494 F.2d 840, 846 (3rd Cir. 1974).

In the present case, there is no material difference between TTFT coverage for Mr. Christenson between, *e.g.*, October 2018 (when ALJ Zettel found it was covered) and November 2018 (when ALJ Watson found it was not covered).  There is no evidence that TTFT got any less safe and effective, less life-extending, less "medically reasonable and necessary" for Mr. Christenson, or less of a Medicare covered treatment in the passage of one month.  Likewise for Mrs. Prosser.

4

The cases cited by the Secretary do not say otherwise.  The Secretary cites *In re Grand Jury Proceedings*, 347 F.3d 197 (7ᵗʰ Cir. 2003) and *Rucker v. Chater*, 92 F.3d 492 (7ᵗʰ Cir. 1996) for the proposition that decisions concerning different time periods preclude collateral estoppel. Opp. at 26.  Both of those cases merely stand for the proposition that, where present, "changed circumstances" can preclude the application of collateral estoppel.  *Grand Jury*, 347 F.3d at 202 ("circumstances have changed in the last five years"); *Rucker*, 92 F.3d at 495 ("Rucker's two [Social Security] applications, by contrast, were four years apart.").[2]  Here, there is no evidence of "changed circumstances."

The same facts/issues were actually litigated and determined in the final favorable decisions on which collateral estoppel is based as are at issue in the adverse decisions appealed in this case.

### 3.     The Same Issues Were Actually Litigated

Relying on the theory that decisions covering different months concern different issues, the Secretary asserts that different issues were actually litigated in the decisions on which collateral estoppel is based and the decisions appealed in this case.  Opp. at 27.  For the reasons, set forth above that theory should be rejected.

The three cases cited by the Secretary (*Donovan v. Fed. Clearing Die Casting Co.*, 695 F.2d 1020 (7ᵗʰ Cir. 1982); *California Communities Against Toxics, v. EPA*, 928 F.3d 1041 (D.C.

---

[2] The Secretary's reliance on *Applied Medical Resources Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1361-62 (Fed. Cir. 2006) (Opp. at 27) is particularly off-base.  *Applied* is a patent case discussing reasonable royalties.  Under Federal Circuit precedent, a reasonable royalty is based on the rate the parties would have accepted in a hypothetical negotiation taking place just before the infringement began.  Thus, the reasonable royalty determined in one case for infringement beginning on one date cannot collaterally estop either party from arguing for a different reasonable royalty for separate acts of infringement beginning on a different date at issue in a later case.

5

Cir. 2019); *Interoceanica v. Sound Pilots*, 107 F.3d 86 (2nd Cir. 1997)), merely stand for the proposition that where a court explicitly says that it is not deciding an issue, the issue was not actually litigated. By contrast, all of the decisions (both those finding coverage and the appealed decisions) actually decided whether TTFT was a covered benefit (and the sub-issues) for Mr. Christenson and Mrs. Prosser.

### 4. The Secretary Was Fully Represented

On pages 27-28, the Secretary contends that he was not fully represented in the hearings before his own ALJs on which collateral estoppel is based and that he had an "extremely limited" opportunity to appeal. In support of this claim, the Secretary offers a series of strawman arguments regarding proceedings below the ALJ level and what the Secretary's regulations say when an unrepresented party appeals to an ALJ. These arguments are baseless.

First, pursuant to *Astoria* and *Utah Construction*, collateral estoppel only applies when a department/agency is acting in a "judicial capacity." In proceedings below the ALJ level (*i.e.*, initial denial, redetermination, and reconsideration), the Secretary is not acting in a "judicial capacity", so whether the Secretary has a role there or not is irrelevant. By contract, clearly, both the ALJs and the Council are the Secretary acting in a "judicial capacity" and may form the basis for collateral estoppel.

The Secretary's comments regarding unrepresented parties are irrelevant. As noted in Plaintiffs' opening papers, when a beneficiary is represented, the Secretary has the full panoply of rights of any litigant. Mot. at 7-8, 17. In the present case, as shown, *e.g.*, in Exhibits H, J, and L, Mr. Christenson and Mrs. Prosser were represented by counsel (Ms. Parrish) and the Secretary has not challenged that fact. Thus, the Secretary had all the rights of any litigant, including appeal. *See* 42 C.F.R. §§ 405.1100-1140. Indeed, regardless of what the Secretary chose to do

before the ALJ, the Secretary can appeal on so-called "own motion review." *See* 42 C.F.R. § 405.1110. It is simply untrue to say that the Secretary had "extremely limited" opportunity to appeal.

The Secretary was fully represented in the proceedings giving rise to collateral estoppel and had every opportunity to litigate the issues. In those proceedings, Mr. Christenson and Mrs. Prosser carried their burden of proof.

**B.     Correction of Errors/Incomplete Statements of Fact**

Before addressing any of the Secretary's legal arguments, correction of several errors/incomplete statements of fact may clarify consideration of the issues.

**1.     The Secretary's Comments Regarding Pending ALJ Appeals**

The Secretary claims that "over 400,000 Medicare claim appeals [are] filed each year at the ALJ level." Opp. at 28. Not only is that false, every aspect of it is troubling.

This is not the only litigation Secretary is involved in. One of the other cases is *American Hospital Assoc. v. Sebelius*, Case No. 14-cv-851-JEB, (D.D.C.). There, the Court issued a *writ of mandamus* ordering the Secretary to reduce the backlog of cases pending before ALJs according to a schedule and to provide status reports of the Secretary's progress to the Court. On March 25, 2020, (*i.e.*, 40 days before the Secretary filed his opposition/cross-motion in this case), the Secretary filed his latest status report in the D.C. case.

Rather than the "over 400,000 Medicare claim appeals filed each year at the ALJ level", the status report provided to the D.C. Court for FY19 indicates that 43,887 appeals were filed at

7

the ALJ level. *See* Exhibit Q.[3] That is, the true number is ~11% of what was represented to this Court. In Plaintiffs' view, even ~44,000 appeals substantially overstates the relevant figure because it includes appeals of all kinds, the vast majority of which are hospital/provider appeals.

This is a "beneficiary appeal", *i.e.*, an appeal by Mr. Christenson and Mrs. Prosser themselves as opposed to an appeal by a hospital/provider that is likely have much more substantial resources than Mr. Christenson and Mrs. Prosser and for whom delay is less of a burden. The Secretary has published data for FY19 indicating that 5,148 beneficiary appeals were filed at the ALJ level, *i.e.*, ~1.3% of the represented 400,000 figure.[4] Indeed, even that figure is overstated because it includes appeals in Social Security cases.

Even a figure limited to Medicare beneficiary appeals would likely overstate the true number. Though the Secretary has published no data, it is believed that the vast majority of Medicare beneficiary appeals are by unrepresented beneficiaries (*i.e.*, with no lawyer present).[5] By contrast, as detailed below, this case concerns appeals by represented beneficiaries - where it is indisputable that the Secretary has the full panoply of litigation rights.

The Court will have to decide whether it is material that the true number is 11%, 1.3%, or an even smaller figure than was represented in the Secretary's opposition - but the Court should at least have accurate information.

---

[3] As shown in Exhibit Q, the number of appeals filed at the ALJ level has fallen dramatically, every year for the last five years. In 2013 and 2014, the Secretary conducted very aggressive audits of hospital charges for in-patient care and retroactively denied hundreds of thousands of claims, which were appealed (referred to in the materials as "RAC" appeals). This spike appears to be the reason that the Secretary choose to offer data from a period 5-6 years ago rather than data that is readily available to the Secretary showing appeals filed through the end of March 2020.

[4] https://www.hhs.gov/about/agencies/omha/about/current-workload/beneficiary-appeals-data/index.html (visited April 24, 2020).

[5] Whether collateral estoppel can or should apply in those cases is a matter for another day.

## 2. The Secretary's Comments Regarding LCDs

While Plaintiffs do not believe it to be relevant to the issues before the Court on this motion, the Secretary's comments regarding the promulgation and maintenance of LCDs generally, and the LCD discussed in the decisions below, are, at best, incomplete. Opp. at 6-7.[6]

Some discussion of what "LCDs" are may help orient the Court. Much of the Medicare program is not actually run by the Secretary. Instead, the Secretary has divided the country into four regions and hired contractors ("Medicare Administration Contractors") to run the lower levels of the Medicare program. In this capacity, the Contractors themselves develop Local Coverage Determinations (LCDs) which guide the processing of claims at the initial levels. Thus, Contractors develop LCDs applicable to a device or service for their area.

Claims for Medicare coverage (for Part B) are originally submitted to the Contractor for the appropriate region and the Contractor itself applies any relevant LCD to approve or reject a claim. Likewise, when an appeal of an initial denial (a "redetermination") is submitted, that goes to the Contractor - who verifies his earlier decision applying the LCD he developed.

If the claim is denied again and appealed ("reconsideration"), the claim is reviewed by a third party (*i.e.*, the "Qualified Independent Contractor" (QIC)). The QIC is not bound to follow the LCD but if it does not, it must explain its decision. *See* 42 C.F.R. § 405.968(b)(2). Likewise, if the claim is appealed from the QIC, neither ALJs nor the Council are bound by LCDs but, if they do not follow an LCD, they must explain their decision. *See* 42 C.F.R. § 405.1062(a).

It is true that LCDs are supposed to be developed by considering medical literature, etc. and be reviewed to ensure that they do not become outdated. However, unmentioned in the

---

[6] The Secretary's citation to various sections of the Medicare Program Integrity Manual (MPIM) is also in error. The sections cited by the Secretary were adopted in 2019 while the LCD relevant to the present claims was adopted in 2015.

Secretary's paper is that did not happen in the case of TTFT. That is, the LCD that became effective on October 1, 2015 did not consider the suspension of the clinical trial in 2014 on the grounds that withholding TTFT from the control group would have been unethical. Likewise, the LCD was not reviewed after its issuance and did not consider the large number of scientific studies showing the effectiveness of TTFT, additional FDA approval in October 2015, the fact that TTFT had become the standard of care for GBM no later than 2018, as well as clinical trials and seminal papers concerning the same.

Because of this complete failure of process, in May 2019, ALJ Scott Anderson determined that the 2015 LCD concerning TTFT was not supported by substantial evidence. *See* CAR118-122. The Secretary's claim that this decision was a result of a "request" from Novocure (Opp. at 6) to approve payment for newly diagnosed GBM is false. Instead, ALJ Anderson's decision was the result of a challenge by a Medicare beneficiary (*i.e.*, the "Aggrieved Party" – Mr. Green) contending that the LCD was not supported by substantial evidence. Thereafter, the Contractor submitted a revised LCD (that is also being challenged) that only applies to dates of service after September 1, 2019. As a result, the original LCD is deemed invalid. *See* 42 C.F.R. §§ 426.420(b); 426.460(b). Accordingly, the LCD that was used to deny coverage of both Mr. Christenson and Mrs. Prosser's claim has been invalidated. This is a separate reason why the decisions at issue denying coverage should be reversed on the merits. Nevertheless, a proper application of collateral estoppel will prevent Mr. Christenson, Mrs. Prosser, and this Court from having to bear the burden of litigating the same issues again and again.

### 3. The Secretary's Comments Regarding Mr. Christenson, Mrs. Prosser and Procedure Below

On pages 8-11, the Secretary makes a number of factual claims regarding Mr. Christenson and Mrs. Prosser that merit no reply. The Secretary's comments about a response Mrs. Prosser's

counsel, Ms. Parrish, made to a question by ALJ Grow merits clarification. During the hearing, Judge Grow asked Ms. Parrish whether *Ms. Parrish* was challenging the LCD under the separate process for LCD challenges under 42 C.F.R. § 426. Because Ms. Parrish also represented the "Aggrieved Party" (Mr. Green) in the successful LCD challenge, she correctly responded "Yes." *See* CAR5395.

The LCD challenge process and the claim appeal process are akin to a "facial" Constitutional challenge to a statute versus an "as applied" challenge. The LCD challenge process (42 C.F.R. § 426) challenges the LCD itself and, if successful, invalidates the LCD for all Medicare beneficiaries (*i.e.*, a facial challenge). By contrast, in the claim appeal process, the beneficiary may assert that the LCD should not be applied to just the beneficiary and the result there has no impact on claims by other Medicare beneficiaries (*i.e.*, an "as applied" challenge).

### 4. The Secretary's "Future Claims" and Revised LCD Comments

The Secretary makes several mischaracterizations that Mr. Christenson and Mrs. Prosser are seeking to recover for "future claims" in this case and the possible effect, if any, of the revised LCD that went into effect on September 1, 2019. Opp. at 22-23, 29-30. Such comments misapprehend the basis of this case and the relief sought.

At issue in this case is Mr. Christenson's claim for coverage for the months of November 2018-January 2019 and Mrs. Prosser's claim for coverage for the months of January-April 2018. No other claims are at issue and no prospective relief is sought.

When Mr. Christenson and/or Mrs. Prosser submit additional claims in the future for TTFT coverage, any decision as to whether collateral estoppel will apply to those claims will depend on the facts and issues relevant at the time.

As set forth in the Complaint, a case like this technically seeks "injunctive relief" not "damages" (*i.e.*, an injunction requiring the Secretary to provide coverage for the claims at issue). *See Bowen v. Massachusetts*, 487 U.S. 879, 893-901 (1988). Thus, the Secretary misunderstands the nature of the injunction sought. Accordingly, the Secretary's comments regarding "future claims", "presentment" (*i.e.*, the requirement to submit a claim), "channeling" (*i.e.*, the requirement to proceed through the claim process) (Opp. at 2, 13, 22-24), and the revised LCD that took effect after the claims at issue in this case (Opp. at 29-30) are simply irrelevant.

**C.     Standard of Review**

The Secretary's statement of the standard or review is erroneous. Opp. at 12. Pursuant to 42 U.S.C. § 405(g) (as amended by 42 U.S.C. § 1395ff(b)(1)(A)), "the findings of [the Secretary] *as to any fact*, if supported by substantial evidence, shall be conclusive." (emphasis added). Thus, it is only factual conclusions that are subject to the substantial evidence standard. For all other issues, the decisions are reviewed using any standard applicable under the Administrative Procedure Act (APA). *See, e.g., Friedman v. Sebelius*, 686 F.3d 813, 826-27 (D.C. Cir. 2012) (applying arbitrary and capricious standard).

In this case, Mr. Christenson and Mrs. Prosser have brought challenges under the various provisions of the APA (including, but not limited to, the finding not being supported by substantial evidence). *See* Complaint, Counts I-VI.

The Secretary also objects to Exhibits H, J, L and M to Plaintiffs' motion as being outside the record. Exhibits H, J, and L are copies of pre-hearing briefs submitted by Mrs. Prosser's counsel in the decisions on which collateral estoppel is based. Exhibit M is the favorable decision of ALJ Sardinas issued on March 18, 2020 (*i.e.*, after this case was filed). To date, Mrs. Prosser has received no indication that the Secretary appealed ALJ Sardinas' decision and, as of the date

of this filing, it has become final and, therefore, is a proper basis for collateral estoppel. While it is true that these documents are not part of the record, the Court may properly take judicial notice of them.

The nature of collateral estoppel is that a final decision giving rise to collateral estoppel can occur *after* the non-final decision being estopped. *See* Dkt. #12 at 2 (citing *Adkins v. Nestle Purina Petcare Co.*, 779 F.3d 481, 484 (7th Cir. 2015)). Thus, at least partly because of the manner in which collateral estoppel may arise, judicial notice of other proceedings/decisions giving rise to collateral estoppel is common. Indeed, in highly similar circumstances, the Seventh Circuit itself has taken judicial notice of other proceedings to vacate an agency determination.

In *Opoka v. INS*, 94 F.3d 392 (7th Cir. 1996), the Circuit was "limited to reviewing the evidence that was before the BIA at the time it made its decision." *Id*. at 394. However, after the BIA proceeding concluded, a relevant decision in another proceeding occurred. *Id*. ("After Mr. Opoka's proceedings were concluded by the BIA, Mrs. Opoka was granted a suspension of deportation."). Not only did the Seventh Circuit take judicial notice of these later proceedings to vacate and remand the BIA decision, the Seventh Circuit held that it would be "derelict" in its duty if it did not. *Id*. at 394-95.[7]

Pursuant to 42 U.S.C. § 405(g), this Court may base its decision "upon the pleadings and transcript of the record." Thus, this Court can properly consider ALJ Sardinas' decision as part of the "pleadings" in this case. Exhibits H, J, and L are pre-hearing briefs cited only for the purpose

---

[7] See also *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("A court may take judicial notice of an adjudicative fact …"); *Ross v. Meyer*, 741 Fed.Appx. 56, 59 (3rd Cir. 2018) (judicial notice of decisions in parallel proceedings); *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892-93 (11th Cir. 2013) (judicial notice of entry of judgment in related proceeding supporting collateral estoppel); *Coney v. Smith*, 738 F.2d 1199, 1200 (11th Cir. 1984) (judicial notice of state court proceedings supporting collateral estoppel).

of establishing that Mrs. Prosser was represented in the prior proceedings. Like ALJ Sardinas' decision, this Court may either take judicial notice of them or, if the fact that Mrs. Prosser was represented is not contested, may disregard them.

**D.    The Secretary's Legal Arguments Independent of Medicare Regarding Collateral Estoppel**

The Secretary makes a number of legal assertions about collateral estoppel that are wholly independent of the Medicare Act or Medicare claims processing. The Secretary failed to provide a Table of Contents and the various arguments are spread throughout the Secretary's brief. Accordingly, in the interests of clarity, Plaintiffs gather their responses in this section though, to some degree, the Secretary's arguments overlap.

**1.    The Secretary's Simultaneous But Inconsistent Positions Regarding Collateral Estoppel in Medicare Cases**

Before even addressing the Secretary's legal arguments, Plaintiffs note that the Secretary is simultaneously asserting diametrically opposed positions with regard to collateral estoppel before two different district courts. As noted above, this is not the only case the Secretary is involved in and, again, the Secretary's position in the other litigation does not match his position in this case.

One such case is *Lewis v. Azar*, Case No. 18-cv-2929-RBW (D.D.C.) (pending). There, lead plaintiff Carol Lewis litigated the issue of whether certain diabetes supplies (continuous glucose monitors) were covered Medicare benefits and obtained a final judgment from a district court finding that they were. *See Lewis v. Azar*, 308 F.Supp.3d 573 (D. Mass. 2018). When the Secretary continued to deny Ms. Lewis' claims on the same grounds rejected by the district court, Ms. Lewis brought another suit on behalf of herself and all others similarly situated. Because of her position as a class representative, Ms. Lewis did not assert collateral estoppel based on her prior case.

14

However, in opposing class certification, the Secretary asserted that the Court should *sua sponte* impose offensive collateral estoppel against the Secretary in an effort to remove Ms. Lewis as a class representative. *See* Exhibit R at 7-12. In doing so, the Secretary contradicted his arguments made in this case - in a brief filed less than two weeks before the Secretary's opposition/cross-motion was filed in this Court. Contrary to the arguments in this case, the Secretary argued there (either explicitly or by implication) that offensive collateral estoppel can apply against the Secretary, that the effect of prior decisions is not limited to the particular months at issue, that there is no Constitutional bar to using collateral estoppel to order the Secretary to provide Medicare coverage, that reliance on non-record materials in support of collateral estoppel is appropriate, etc.

In Plaintiffs' view, it is improper for the Secretary to assert mutually exclusive legal positions in different case in hopes of obtaining an advantage without anyone noticing.

### 2. The Supreme Court Has Affirmed the Use of Offensive Collateral Estoppel Against the United States

Page 2 of the Secretary's brief alleges that: "the Supreme Court has never upheld an assertion of offensive collateral estoppel against the United States." Opp. at 1 (*citing U.S. v. Mendoza*, 464 U.S. 154 (1984)).[8] Opp. at 2. The very case cited by the Secretary approvingly cites to a case where the Supreme Court did just that. *Mendoza* explicitly states:

> The concerns underlying our disapproval of collateral estoppel against the government are for the most part inapplicable where mutuality is present, as in *Stauffer Chemical*, *Montana*, and *Moser*.

---

[8] *Mendoza* announced the Supreme Court's view that non-mutual, collateral estoppel could not be applied against the United States, while affirming that mutual collateral estoppel could be applied against the government. *See, e.g., U.S. v. Stauffer Chemical Co.*, 464 U.S. 165 (1984); *Montana v. U.S.*, 440 U.S. 147 (1979).

*Id.* at 163-64. Because it directly concerns the issue of offensive mutual collateral estoppel against the United States, the *Moser* case cited by the Supreme Court is discussed in detail below.

As recounted by the Court in *U.S. v. Moser*, 266 U.S. 236 (1924), Jefferson Moser was a Captain in the Navy. Pursuant to a statute passed by Congress, any officer who served during the Civil War was entitled to the rank and three quarters of the sea pay of the rank above him upon retirement. Mr. Moser was in the Naval Academy during the Civil War and contended that that constituted service "during the civil war." Therefore, at retirement with the rank of Captain, Mr. Moser sought the rank and three fourths the sea pay of a Rear Admiral. When Mr. Moser's claim to the higher pay was refused, he brought suit in the Court of Claims and was victorious.

Apparently, the pay was provided in installments and Mr. Moser was forced to bring three more suits to recover subsequent installments. Each time, he was victorious. *Id.* at 66 ("Three previous suits for installments of the salary …"). However, in the second, third, and fourth suits, the Court of Claims also rested its decision in Mr. Moser's favor on the collateral estoppel branch of the doctrine of res judicata.[9] *Id.* at 240 ("In the second and third Moser Cases, however, the Court of Claims declined to follow the Jasper case, holding that by reason of its decision in the first Moser Case, the question was res judicata. The present suit was decided in Moser's favor upon the same ground[.]").[10] When the United States appealed the fourth decision in Mr. Moser's

_____

[9] "Res judicata" is a legal doctrine incorporating the concepts of "claim preclusion" (formerly known as "merger" and "bar") and "issue preclusion" (formerly known as "collateral estoppel"). The confusing use of these terms has led to modern efforts to limit "res judicata" to mean "claim preclusion" and to use the term "issue preclusion" instead of "collateral estoppel." *See* THE RESTATEMENT (SECOND) OF JUDGMENTS (1982); *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n. 1 (1984). As used in *Moser*, the Supreme Court was using "res judicata" in its "issue preclusion" sense.

[10] In the *Jasper* case referred to, the Court of Claims had later reached the opposite legal conclusion as to a different claimant, before changing its mind again in the next Moser case. *Id.* at 240.

favor to the Supreme Court, the Supreme Court affirmed based on the application of collateral estoppel. *Id*. at 241 ("… the court was clearly right in its application of the doctrine of res judicata"); 242 ("… the point at issue is to be determined by applying the second branch of the rule. The question expressly and definitely presented in this suit is the same as that definitely and actually adjudged in in favor of the claimant in the three preceding suits[.]"). Thus, the application of offensive, mutual collateral estoppel precluded the United States from contesting that Moser's time at the Naval Academy constituted "service during the civil war" and, therefore, from denying Mr. Moser's subsequent claim.

While decided in 1924, the Supreme Court approvingly cited *Moser* in *Mendoza* and *Stauffer* (both in 1984) and the case has been cited nearly 250 times since it was decided, including by the Seventh Circuit. *See U.S. v. County of Cook, Illinois*, 167 F.3d 381, 385 (7th Cir. 1999) ("The special treatment of offensive nonmutual issue preclusion does not qualify this rule when identical parties contest sequential suits.") (internal citations omitted).

Thus, this Court should reject the Secretary's fundamental assertion that offensive collateral estoppel cannot be applied against the government by a party to a prior litigation who prevails on the same issue against the government. *See also, e.g., Hanover Bank v. U.S.*, 285 F.2d 455, 459-60 (Ct. Cl. 1961) (action for refund of taxes, government estopped from recalculating taxes based on finding in prior litigation between the parties, cited in *U.S. v. Utah Construction Co.*, 384 U.S. 394, 422 (1966)).

### 3. The Secretary's Confusion Regarding Mutual and Non-Mutual Collateral Estoppel

By way of background, mutual collateral estoppel (whether defensive or offensive) is a venerable aspect of Anglo-American common law. *See, e.g., Cromwell v. County of Sac*, 94 U.S. 351, 353 (1876) (*citing Outram v. Morewood*, 3 East, 346 (UK 1803) a leading English case

17

Case 1:20-cv-00194-WCG   Filed 05/19/20   Page 23 of 34   Document 16

applying offensive collateral estoppel); *Keokuk & W.R. Co. v. State of Missouri*, 152 U.S. 301, 317 (1894) ("The operation of an estoppel must be mutual.").[11]  Collateral estoppel serves the triple purposes of protecting litigants from the burden of relitigating an identical issue against the same party, promoting judicial economy by preventing needless litigation, and encouraging reliance on adjudication by preventing inconsistent results.  *See Allen*, 449 U.S. at 94;  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1978).

Mutuality was a requirement of collateral estoppel until 1971 when the Supreme Court relaxed the requirement, at least defensively, in *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313 (1971).  Thereafter, in 1978 in *Parklane*, the Supreme Court further relaxed the mutuality requirement to allow non-mutual, offensive collateral estoppel (subject to various considerations).  By its own terms, *Parklane* only addressed non-mutual, offensive collateral estoppel and did not purport to change the law with respect to mutual, offensive collateral estoppel.  *Parklane*, 439 U.S. at 326 ("Specifically, we must determine whether a litigant who was *not a party* to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding.") (emphasis added); *Id.* at 326 n. 4 (defining "offensive" and "defensive" collateral estoppel as used in the opinion).  *See also Burlington*, 63 F.3d at 1232 ("… is referred to as offensive, non-mutual collateral estoppel, which has been recognized as proper by the Supreme Court in [*Parklane*].").

Finally, in *Mendoza*, the Supreme Court addressed whether the more liberal collateral estoppel approach of *Blonder-Tongue* and *Parklane* applied against the United States.  In *Mendoza*, the Supreme Court held that it did not because of the United States' unique position as

---

[11] *See* M. BIGELOW, "A TREATISE ON THE LAW OF ESTOPPEL OR OF INCONTESTABLE RIGHTS", Chap. 2, § 2 (6th ed. 1913) for a detailed discussion of what would now be called "issue preclusion"/"collateral estoppel."  *Id.* at 103-4 (discussion of *Outram*).  *See* Exhibit S.

a litigant. In so doing, as detailed above, the Supreme Court approvingly cited cases holding that mutual collateral estoppel (even offensive) could be applied against the United States by the party to the prior, successful litigation.

With that background, the Secretary's various assertions are addressed. The Secretary's citations to *Heckler v. Community Health Services of Crawford County*, 467 U.S. 51 (1984) (Opp. at 2) is particularly inapt. *Heckler* concerns "equitable estoppel", which is an entirely different form of estoppel than is at issue in this case and has no bearing here.

By contrast, the present case involves mutual collateral estoppel as it has been applied for at least 100 years against the United States. Thus, when resolving claims for TTFT coverage brought by different Medicare beneficiaries, *i.e.*, cases not involving Mr. Christenson or Mrs. Prosser as claimants, the Secretary would still be free to make whatever decision was warranted under the facts and circumstances of those claims (*i.e.*, cases could still "percolate"). What the Secretary is not free to do is force Mr. Christenson, Mrs. Prosser, and the Courts to bear the burden of repeatedly litigating the identical issue in every TTFT claim brought by them, and to suffer the risk and consequence of inexplicably conflicting results.

### 4. The Secretary's Erroneous Comments Regarding "Precedential" Decisions and Collateral Estoppel

Respectfully, it is difficult to follow the Secretary's comments regarding "precedential" decisions and collateral estoppel. Opp. at 15-16. Apparently, in the Secretary's view, decisions that are "precedential" and those giving rise to "collateral estoppel" are synonymous. This reflects a fundamental misunderstanding of the distinct legal concepts at issue.

A "precedential" decision is binding on all lower courts/decision makers, regardless of the parties before the lower court/decision maker. *See, e.g., Alleghany General Hospital v. National Labor Relations Board*, 608 F.2d 965, 969-70 (3rd Cir. 1979). By contrast, "collateral estoppel"

focuses on the issues and parties to an earlier litigation and binds those parties in a subsequent litigation of the same issues regardless of the level of review, if any.

Recognizing the difference between a decision having "precedential effect" and a decision giving rise to collateral estoppel, prior to the adoption of FED.R.APP.P. 32.1(a) in 2006, numerous federal appellate courts enacted local rules that precluded citation to non-precedential decisions except when cited, *inter alia*, for purposes of collateral estoppel. *See, e.g.*, 7th Cir. Rule 32.1(b)/(d) ("Every order bears the legend: 'Nonprecedential disposition.'"); ("No order of this court issued before January 1, 2007, may be cited except to support a claim of preclusion (res judicata or collateral estoppel) or to establish the law of the case from an earlier appeal in the same proceeding.").

Simply put, "precedence" and "collateral estoppel" are distinct legal concepts and "precedence" has no bearing on this case.

### 5. The Secretary's Appropriations Clause Argument

The Secretary's argument that applying collateral estoppel would violate the Appropriations Clause of the Constitution seems particularly off-base. Opp. at 24-25. In support of this argument, the Secretary cites several cases where *equitable estoppel* was at issue – *i.e.*, cases where, though no statute authorized payment or a statute barred payment, some conduct by the government (*e.g.*, erroneous advice) was alleged to estop the government from withholding payment. That was the situation in *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990) (wrong advice about earnings limits); *Columbus Regional Hospital v. F.E.M.A.*, 708 F.3d 893 (7th Cir. 2013) (promise to pay); *Monongahela Valley Hospital, Inc. v. Sullivan*, 945 F.2d 576 (3rd Cir. 1991) (unclear information on depreciation rules); *Downtown Medical Center/Comprehensive Health Care Clinic v. Bowen*, 944 F.2d 756 (10th Cir. 1991) (wrong advice

about billing). Thus, the Secretary's quotes from these cases are taken out of context because they all concern equitable estoppel, not collateral estoppel.

By contrast, in the decisions on which Mr. Christenson' and Mrs. Prosser's assertions of collateral estoppel are based, the Secretary finally determined that the TTFT is a covered benefit in accordance with the laws passed by Congress. *See, e.g.*, Exhibit D (for Mr. Christenson) at 7-8 ("… is reimbursable under Part B of Title XVIII of the Act."). Those decisions having become final, the Secretary is estopped to arrive at a different conclusion and deny their claims.

### E. The Secretary's Legal Claims Specific to Medicare Regarding Collateral Estoppel

At least some of the Secretary's collateral estoppel arguments revolve around Medicare/the Medicare Act and those are addressed here.

#### 1. *De Novo* Review

The Secretary contends that applying collateral estoppel would conflict with the requirement for the Council to review cases *de novo*. Opp. at 16-17 (*citing* 42 U.S.C. § 1395ff(d)(2)(B)). Again, this misapprehends fundamental principles.

"*De novo*" review merely means that the reviewing court conducts its review "independent, with no deference given to the trial court's conclusion." *See, e.g., In re: Deitz*, 760 F.3d 1028, 1043 (9th Cir. 2014). Thus, the reviewing court decides matters in the same stead as the court/tribunal appealed from without any deference to the conclusions reached by the court/tribunal being reviewed.

Of course, such *de novo* review does not mean the reviewing court can proceed without regard to any legal principles/doctrines. Courts routinely apply collateral estoppel in matters subject to *de novo* consideration/review. Indeed, orders granting summary judgment based on collateral estoppel are subject to *de novo* appellate review, as is the application of collateral

estoppel itself.  *See, e.g., Grede*, 867 F.3d 774; *Taylor v. City of Lawrenceburg*, 909 F.3d 177, 180 (7th Cir. 2018).  The Secretary's position that collateral estoppel can never apply wherever there is *de novo* review is obviously incorrect.

The Secretary's citation to *Almy v. Sebelius*, 679 F.3d 297 (4th Cir. 2012) (Opp. at 15) is inapposite that case involved only an "arbitrary and capricious" review across multiple cases (and apparently different plaintiffs) and not collateral estoppel.  Likewise, inapposite is the Secretary's citation to *Porzecanski, v. Azar*, 943 F.3d 472 (D.C. Cir. 2019) (Opp. at 16).  In *Porzecanski*, the plaintiff sought an injunction mandating coverage of any "future claims" the plaintiff might submit.  *Id.* at 475.  Clearly, that is barred because claims have to be presented and circumstances may change in the future.  By contrast, here, Mr. Christenson and Mrs. Prosser seek only retrospective relief regarding a claim they have already submitted and there are no changed circumstances.

The Secretary's quotation from the RESTATEMENT (SECOND) OF JUDGMENTS (Opp. at 17) merely says the same thing that the Supreme Court said in *Astoria*.  That is, it is presumed that collateral estoppel applies, unless there is a statute to the contrary.  Tellingly, after quoting the Restatement's discussion of "legislative policy", the Secretary's next sentence starts with the phrase "Medicare regulations clearly state …"  Regulations are not statutes or legislation.[12]

There is no conflict between *de novo* review under 42 U.S.C. § 1395ff(d)(2)(B) and collateral estoppel.

### 2.	Collateral Estoppel Is Not Contrary to Statutory Purpose, Will Not Frustrate Congressional Intent

---

[12] If collateral estoppel was so easily avoided, every agency would adopt regulations precluding collateral estoppel against the agency but allowing the agency to assert it against other parties. Clearly, such an approach would be contrary to the mandate of the Supreme Court in *Astoria*, *Utah Construction*, etc.

While the Secretary contends that applying collateral estoppel would conflict with a statutory purpose to the contrary or frustrate congressional intent, the Secretary never identifies any such statute or alleged intent.  Opp. at 2, 13, and 22.  Indeed, there is no indication that Congress intended that persons suffering from lethal brain cancer be required to hire lawyers to embark on protracted, and repeated, legal battles simply to obtain the life-extending standard of care.  Rather than a statute, at best, the Secretary relies on his own regulations.  Opp. at 19 ("contravene the Medicare regulations").  Of course, a statute and regulations are two different things.

### 3.     Alleged Interference With Discretion to Implement the Medicare Statute

On pages 2, 13, 17-21, the Secretary presents a broad argument that his actions are immune from the opinions of the Supreme Court (*Astoria* and *Utah Construction*) or any legal principles because that would interfere with the Secretary's "discretion" to implement the Medicare Act. Indeed, the Secretary offers that he has discretion to "not be bound by ALJ rulings."  Opp. at 18. In support of this claim, the Secretary cites a mishmash of cases, involving disparate facts and irrelevant issues, and quotes various passages from such cases out of context.

Pursuant to *Astoria* and *Utah Construction*, collateral estoppel only applies when a department/agency is acting in a "judicial capacity."  Thus, the Secretary's citations to, and quotes from, *Devon Energy Corp. v. Kempthorne*, 551 F.3d 1030 (D.C. Cir. 2008) and *Comcast Corp. v. F.C.C.*, 526 F.3d 763 (D.C. Cir. 2008), are not relevant because they involve only non-judicial proceedings/statements by agencies.  *See Devon*, 551 F.2d at 1040 (Royalty Policy Board statements); *Comcast*, 526 F.2d at 769 (FCC Media Bureau waivers).

Along these same lines, the Secretary cites and quotes from six cases concerning the Provider Reimbursement Review Board (PRRB).[13]  The PRRB is not composed of ALJs.  Instead, the PRRB is a five-member panel of "persons knowledgeable in the field of healthcare reimbursement" (42 C.F.R. § 405.1817) charged with reviewing accounting decisions of contractors regarding reimbursements to providers.  In the words of the Seventh Circuit, the PRRB is comprised of "minions" within the Department.  *Homemakers North Shore, Inc. v. Bowen*, 832 F.2d 408, 413 (7th Cir. 1987).  Thus, again, the PRRB is not an instance of the Department acting in a "judicial capacity" and these cases are irrelevant.

As to the Secretary's allegation that applying collateral estoppel would interfere with his discretion to decide matters by promulgating rules or by individual adjudication (Opp. at 18), there is nothing to that.  Where the Secretary has elected to proceed by individual adjudication, applying collateral estoppel would not interfere with that choice.  Instead, it would only mean that collateral estoppel may, or may not, apply as to that particular plaintiff in that individual adjudication.

For example, the next time that Mr. Christenson submits a claim for coverage of his TTFT device, that matter will be individually adjudicated.  Based on his earlier favorable decisions, Mr. Christenson will assert that (absent changed circumstances) the Secretary is collaterally estopped from denying that TTFT is a covered Medicare benefit for him/is "medically reasonable and necessary."  Indeed, absent changed circumstances, that will be the case in all future claims by Mr.

---

[13] *Community Care Foundation v. Thompson*, 318 F.3d 219, 227 (D.C. Cir. 2003); *Homan & Crimen, Inc. v. Harris*, 626 F.2d 1201, 1205 (5th Cir. 1980) (non-final decision of PRRB, "a five-member panel of experts"); *Abraham Lincoln Memorial Hospital v. Sebelius*, 698 F.3d 536, 556 (7th Cir. 2012); *Homemakers North Shore, Inc. v. Bowen*, 832 F.2d 408 (7th Cir. 1987) ("… the Secretary's minions have taken a different view …"); *County of Los Angeles v. Leavitt*, 521 F.3d 1073, 1079 (9th Cir. 2008).

Christenson.  Thus, just as in *Moser*, individual adjudication using collateral estoppel does not interfere with the Secretary's discretion to choose the manner of resolving claims.

The Secretary's citation to *Int'l Rehab Sci. Inc. v. Sebelius*, 688 F.3d 994, 1001 (9th Cir. 2012) (Opp. at 21) is inapposite because, again, that case involved only an "arbitrary and capricious" review across multiple cases and not collateral estoppel.  Likewise, inapposite is the Secretary's out of context citation to, and quotation from, *Freeman v. U.S. Dep't of Interior*, 37 F.Supp.3d 313, 344-45 (D.D.C. 2014).  Opp. at 21.  The court' comments that the Secretary references from that decision were in the context of a plaintiff that argued that prior ALJ decisions to which it was not a party "bound" the Department in a non-mutual, collateral estoppel sense. Citing *Mendoza*, the court there properly rejected that assertion.  *Id*. at 346 ("Under these circumstances, the general rule amply applies and no non-mutual preclusive effect is warranted for the ALJ rulings in *Aloisi* and *Story*.").  As already shown, such reasoning is inapplicable where mutuality exists.

The Secretary's long discussion of *Almy* is likewise inapposite.  Opp. at 20.  As indicated, *Almy* concerned only an "arbitrary and capricious" review across multiple cases (and apparently different plaintiffs) by a plaintiff seeking coverage for "future claims."  Thus, the comments there were in the context of those issues and not collateral estoppel.

Collateral estoppel does not interfere with the Secretary's discretion to implement the Medicare Act by individual adjudication.

### 4. Alleged Lack of Incentive To Litigate

The Secretary closes his discussion of collateral estoppel attempting to invoke the "lack of incentive to litigate" exception to collateral estoppel.  Opp. at 28-29.  As explained by the Supreme Court in *B & B Hardware, Inc. v. Hargis Indust., Inc.*, 575 U.S. 138 (2015), collateral estoppel

may be "inapt if the amount in controversy in the first action was so small in relation to the amount in controversy in the second that preclusion would be plainly unfair." *Id.* at 159. Likewise, in *Parklane*, the Supreme Court indicated that if the amount in the first action is so small, a party may have little incentive to litigate "particularly if future suits are not foreseeable." *Parklane*, 439 U.S. at 330.

While discussing the exception, the Secretary never makes any effort to demonstrate how it applies here. First, there is no material disparity between the amounts at stake in both the decisions forming the basis for collateral estoppel and the decisions being appealed. Indeed, the stakes are identical in that all of the decisions concern particular months of coverage. Thus, the Secretary had the same incentive to litigate the decisions on which collateral estoppel is based as he did in the decisions complained of. Second, given that the TTFT device is rented on a monthly basis and that claims will be submitted as long as Mr. Christenson and Mrs. Prosser are alive, clearly, future claims/suits were foreseeable.

To the extent that the Secretary's point is that he just did not care about the earlier cases because he does not consider them significant, that demonstrates that the application of collateral estoppel is fair. Because they concern identical issues, each claim by Mr. Christenson and Mrs. Prosser is just as important as the others. If the Secretary did not care about the earlier cases, then there is no reason not to apply collateral estoppel to the present cases because the Secretary still does not care.

The Secretary had every incentive to litigate and the application of collateral estoppel would not be unfair.

**F.     The Secretary's Erroneous Assertion Regarding the
        Causes of Action in this Case**

On page 30, the Secretary asserts that if Plaintiffs' motion to apply collateral estoppel is denied, then Mr. Christenson' and Mrs. Prosser's claims should be dismissed. Respectfully, that reflects a serious misunderstanding of the procedural posture of this case.

As detailed in the Complaint, both Mr. Christenson and Mrs. Prosser have a number of causes of action alleging that the Secretary's denial of their claims fails to comply with the law under various sections of the APA. Simply as an example, Plaintiffs allege that the decisions should be reversed because they are "arbitrary and capricious." *See* Complaint, Count III. In support of those Causes of Action, Plaintiffs assert that the Secretary is collaterally estopped from denying coverage. However, should the Court decide against Plaintiffs on this ground, it would merely mean that the Secretary was not estopped. Plaintiffs' Causes of Action would remain to be resolved with each side bearing its burdens of proof.

Both parties have merely moved for summary judgment as to whether collateral estoppel applies without addressing the substantive merits of the underlying claims. In Mr. Christenson' and Mrs. Prosser's case, the very purpose of asserting collateral estoppel is so that they do not have to bear the burden of relitigating the issues, avoiding waste of judicial resources, and avoiding inconsistent results. If Mr. Christenson and Mrs. Prosser's motion for summary judgment is denied, the merits of the underlying claims will remain to be addressed.

## II. CONCLUSION

The triple purposes of collateral estoppel would be served by its application in this case. First, Mr. Christenson and Mrs. Prosser have been the subject of seven (7) ALJ decisions, so far and have had to bear the costs, delays, and uncertainties of that repeated litigation. Second, if collateral estoppel is not applied, Mr. Christenson and Mrs. Prosser alone could be the source of

as many as eight (8) cases on this Court's docket each year.[14] Third, the application of collateral estoppel would prevent inconsistent results, as demonstrated in this case.

The Secretary's cross-motion for summary judgment should be denied and Mr. Christenson' and Mrs. Prosser's motion granted. The Secretary should be collaterally estopped from denying that TTFT is "medically reasonable and necessary" and a covered Medicare benefit for Mr. Christenson and Mrs. Prosser. The decisions at issue in this case should be reversed and coverage of Mr. Christenson and Mrs. Prosser's claims ordered.

Dated:  May 19, 2020                                  Respectfully submitted,

PARRISH LAW OFFICES
*Attorneys for Plaintiffs*
By: James C. Pistorino
*(Admission to E.D. Wisconsin forthcoming)*
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
james@dparrishlaw.com

DAVIS & PLEDL, SC
*Attorneys for Plaintiffs*

/s/ Robert Theine Pledl
_____

By: Robert Theine Pledl
By: Victoria Davis Davila
1433 N. Water Street – Suite 400
Milwaukee, WI 53202
Telephone: (414) 488-1354
rtp@davisandpledl.com
vldd@davisandpledl.com

---

[14] Because claims for coverage are typically submitted every three months.