# EXHIBIT S

A

# TREATISE

ON THE

# LAW OF ESTOPPEL

OR OF

INCONTESTABLE RIGHTS

BY

MELVILLE M. BIGELOW

SIXTH EDITION, REVISED

By JAMES N. CARTER, Ph.B., J.M.

BOSTON
LITTLE, BROWN, AND COMPANY
1913

Digitized by Google

T7
B

Entered according to Act of Congress, in the year 1872,
By MELVILLE M. BIGELOW,
In the Office of the Library of Congress, at Washington.

---

Copyright, 1886, 1890, 1900, 1913,
By MELVILLE M. BIGELOW.

ties when coming incidentally in question in another court for a different purpose. Having stated that the Spiritual Court had exclusive jurisdiction of questions of marriage, though the temporal courts entertained such questions incidentally, and that the latter courts were bound by the adjudications of the former courts between the same parties, he then said that the case was different when the judgments of the Spiritual Court were involved in *criminal* cases; for then the parties were in all cases different. The king, he said, in whom the trust of prosecuting public offences was vested, was no party to proceedings in the Ecclesiastical Court, and could not be admitted to defend, examine witnesses, intervene in any way, or appeal. He then proceeded to say that whatever might be the doctrine in regard to the conclusiveness of a positive adjudication concerning marriage when involved in a criminal case, a cause of jactitation was different.[1]

Outram *v.* Morewood[2] is a leading case of high authority upon this subject.[3] The case was this: An action of trespass

---

[1] 'This,' he said, 'is ranked as a cause of defamation only, and not as a matrimonial cause, unless where the defendant pleads a marriage; and whether it continues a matrimonial cause throughout, as some say, or ceases to be so on failure of proving a marriage, as others have said, still the sentence has only a negative and qualified effect; viz. that the party has failed in his proof, and that the libellant is free from all matrimonial contract, as far as yet appears; leaving it open to new proofs of the same marriage in the same cause, or to any proofs of that or any other marriage in another cause; and if such sentence is no plea to a new suit there . . . it cannot conclude a court which receives the sentence from going into new proofs to make out that or any other marriage. So that, admitting the sentence in its full extent and import, it only proves that it did not yet appear that they were married, and not that they were not married at all; and by the rule laid down by Holt, L. C. J. such sentence can be no proof of anything to be inferred by argument from it; and therefore it is not to be inferred that there was no marriage at any time or place because the court had not then sufficient evidence to prove a marriage at a particular time and place. That sentence and this judgment may stand well together, and both propositions be equally true; it may be true that the Spiritual Court had not then sufficient proof of the marriage specified, and that your lordships may now, unfortunately, find sufficient proof of some marriage.' See Hughes *v.* Jones, 116 N. Y. 67, 22 N. E. 446, 15 A. S. R. 386.

[2] 3 East, 346. See Loan Association *v.* Black, 119 N. C. 323, 25 S. E. 975.

[3] See among many other cases so treating Outram *v.* Morewood, Pittapur *v.* Garu, L. R. 12 Ind.

Digitized by Google

was brought for digging and getting out coals from a mine alleged by the plaintiff to be within and under his close, called Cowclose. The defendants pleaded and showed title by a regular chain in right of the wife from Sir John Zouch; and they averred that the coals in question were under the lands of Zouch, and were derived by bargain and sale to certain immediate bargainees, from them to the defendant, the wife, and were not within a certain exception named. To this plea the plaintiff replied, and relied by way of estoppel upon a former verdict obtained by him in an action of trespass brought by him against one of the defendants, the wife of the other defendant (she being then sole), in which he declared for the same trespass as now; to which the wife pleaded and derived title in the same manner as now by her and her husband, and in which she alleged that the coal mines in question in the declaration mentioned were at the time of making the above-mentioned bargain and sale by Zouch part and parcel of the coal mines by that indenture bargained and sold. And that upon this point, whether the coal mines claimed by the plaintiff and mentioned in his declaration were parcel of what passed under Zouch's bargain and sale to the persons under whom the wife claimed, an issue was taken and found for the plaintiff, and against the wife. The question was, in the language of Lord Ellenborough, ' whether the defendants, the husband and wife, were estopped by this verdict and judgment thereupon from now averring (contrary to the title so then found against the wife) that the coal mines now in question are parcel of the coal mines bargained and sold by the indenture above mentioned.' And it was held that they were.[1]

App. 16; De Mora v. Concha, 29 Ch. D. 268, C. A. (affirmed on appeal nom. Concha v. Concha, 11 App. Cas. 541).

[1] In delivering the judgment of the court, Lord Ellenborough, C. J. said: ' The operation and effect of this finding, if it operate at all as a conclusive bar, must be by way of estoppel. If the wife were bound by this finding as an estoppel, and precluded from averring the contrary of what has been so found, the husband in respect of his privity, either in estate or in law, would be equally bound. Coke, Litt. 352 a. [See Lindsey v. Danville, 46 Vt. 144, 148.] . . . The question then is, Is the wife herself estopped by this former finding? In Brooke, tit. Estoppel, pl. 15; ibid. Estate, 158, it is said to be "agreed that all the records in which the freehold comes in debate shall be estopped with the land, and run with the land; so that a man may plead this as a party, or as heir, as privy, or by que estate."

Digitized by Google
Case 1:20-cv-00194-WCG   Filed 05/19/20   Page 5 of 5   Document 17-3