UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID CHRISTENSON &
ANNIKEN PROSSER,
            *Plaintiffs*,

v.                                                    Case No. 20-cv-194

ALEX AZAR, in his capacity as Secretary
of the United States Department of Health
and Human Services,
            *Defendant.*

---

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION AND
ALTERNATIVE MOTION FOR §12929(b) CERTIFICATION**

---

**INTRODUCTION**

Respectfully, Plaintiff Anniken Prosser files this motion for reconsideration of the Court's July 6, 2020, decision denying Plaintiff's motion for summary judgment related to collateral estoppel and granting the Secretary's motion in that regard.[1] In addition to/the alternative to reconsideration, Mrs. Prosser respectfully requests certification under 28 U.S.C. § 1292(b) so that this important matter can be promptly resolved by the Circuit court.

**DISCUSSION**

**I. RECONSIDERATION**

Mrs. Prosser acknowledges that motions for reconsideration serve the limited purpose of correcting manifest errors of law or fact. *See Rothwell Cotton Co v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). A "manifest error" is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 244 F.3d 601, 606 (7th Cir. 2000).

---

[1] By way of background, this is a very important legal issue and the subject of multiple cases pending in courts across the United States. So far, the Secretary has offered this Court's decision in two of those cases to support his claim that collateral estoppel does not apply.

1

As shown herein, the Court committed legal error when it, *inter alia,* disregarded, misapplied, and failed to recognize controlling precedent from the Supreme Court that: 1) common law principles (including collateral estoppel) apply unless a statute "speaks directly" to the issue and reflects *Congress'* intent that the common law no longer apply; 2) the abrogation of common law is governed by what *Congress* says in statutes, not what regulations issued *by the Secretary* say or whether they are reasonable or not arbitrary; and 3) given the presumption that common law doctrines remain applicable, the burden of showing that *Congress'* intended to abrogate the common law should have been placed on the party alleging abrogation (*i.e.*, the Secretary, not Mrs. Prosser).

As set forth in *Astoria Federal Savings and Loan v. Solomino*, 501 U.S. 104, 108 (1991), there is a presumption that common law principles (including collateral estoppel) apply to administrative decisions when an agency is acting in a "judicial capacity." As further explained by the Supreme Court, "*statutes* which invade the common law are to be read with a presumption favoring the retention of long-established and familiar principles, except where a *statutory purpose* to the contrary is evident." *U.S. v. Texas*, 507 U.S. 529, 534 (1993) (internal citations and quotations omitted) (emphasis added). "In order to abrogate a common-law principle, the *statute* must 'speak directly' to the question addressed by the common law." *Id*. (internal citations and quotations omitted) (emphasis added).

In its decision, this Court explicitly concluded that there is no Medicare statute that speaks directly to the issue of collateral estoppel. *See* Decision at 9 ("In the absence of statutory language speaking directly to the doctrine of collateral estoppel …"). Because the Court concluded that no portion of the Medicare statute "spoke directly" to the issue of collateral estoppel, under *U.S. v. Texas*, the presumption of the application of collateral estoppel was not overcome and collateral

estoppel remains applicable. That should have been the end of this Court's inquiry. Accordingly, this Court committed manifest error when, despite having concluded that the Medicare statute does not "speak directly" to the issue of collateral estoppel, the Court nevertheless determined that the doctrine of collateral estoppel does not apply to Medicare coverage rulings.

With regard to the presumption, respectfully, the Court's quotation from *Astoria* omits what appear to be the most relevant passages. The Court's decision quotes *Astoria* as follows:

> Courts do not, of course, have free reign to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand. In this context, the question is not whether the administrative estoppel is wise but whether it is intended by the legislature.

Decision at 8 (citing 501 U.S. at 108). However, the sentences immediately following lay out the presumption:

> The presumption holds nonetheless, for Congress is understood to legislate against a background of common-law adjudicatory principles. Thus, where a common-law principle is well established, as are the rules of preclusion, the court may take it as a given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident.

*Astoria*, 501 U.S. at 108. Given the above and this Court's conclusion that the Medicare Act does not "speak directly" to the issue, there is no basis to conclude that *Congress*' intent was to abrogate the common law.

Having determined that the statute does not "speak directly" to the issue of collateral estoppel, this Court "turn[ed] to any relevant HHS regulatory guidance" as its basis for concluding that the Secretary's regulations foreclosed the application of collateral estoppel. Decision at 9; 10 ("These Medicare *regulations* reveal an administrative review structure incompatible with applying collateral estoppel at the agency level.") (emphasis added). Doing so was also manifest error because it contradicts the instructions of the Supreme Court in *Astoria*, *U.S. v. Texas*, and *Green v. Block Laundry Machine Co.*, 490 U.S. 504, 521 (1989). As explained by the Supreme

3

Court, the focus is on congressional/legislative intent, *not* the reasonableness or preferences of the Secretary. *Astoria*, 501 U.S. at 109-10 ("absent clearly expressed congressional intent to the contrary"); *U.S. v. Texas*, 507 U.S. at 535 ("an expression of legislative intent to supplant"); *Green*, 490 U.S. at 521 (must show "legislature intended such a change"); *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) ("The purpose of Congress is the ultimate touchstone.")(internal citations and quotations omitted). Thus, reliance on the Secretary's regulations as reflecting a non-existent Congressional intent was manifest error.

For the same reason, the determinative issue cannot be whether the Secretary acted to foreclose or override collateral estoppel or whether the Secretary's regulations are "reasonable." *See* Decision at 11 ("In the administrative realm, it is not unreasonable or arbitrary for the Secretary to decide what stage deserves preclusive effect."). The Secretary simply lacks the power to make that decision or to enact regulations purporting to do so.[2] Instead, given the presumption, the sole issue is whether *Congress* expressed an intention that collateral estoppel should not apply to Medicare cases. As this Court recognized, it did not.

The Court's citation to the *Restatement (Second) of Judgments* regarding preclusion and "administrative tribunals" (Decision at 12) actually proves Plaintiff's position. According to the *Restatement*, preclusion should not apply if it "would be incompatible with a *legislative policy*" so indicating. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543 (1994). The Secretary is not the legislature and the Supreme Court has informed courts how to determine what Congress' intent

---

[2] Moreover, there is a significant legal difference between a ruling being accorded "precedential" against non-parties compared to the same ruling giving rise to collateral estoppel effect in a subsequent proceeding involving the same parties. A court or tribunal may be able to limit the precedential effect of its own decisions, but it is not for the Secretary to decide the collateral estoppel effect of its own decisions absent any Congressional authorization or intention to abrogate the common law.

4

was.  Simply applying this Court's own conclusion, because the statute does not "speak directly" to the issue, the presumption was not rebutted and collateral estoppel applies.

To the extent that the Court relied on provisions that allow the Secretary to "promulgate regulations and make initial determinations", that was erroneous in three ways.  *See* Decision at 8 (citing 42 U.S.C § 1395ff(a)(1)).  First, of course, that provision does not "speak directly" to the issue of collateral estoppel and, therefore, cannot overcome the presumption.  Second, if the text of the statute is "compatible with preexisting practice", then the presumption is not overcome.  *See BFP*, 511 U.S. at 543.  Thus, because the provision is "compatible with [the] preexisting practice" of collateral estoppel, again, the presumption is not overcome.  Third, the Lanham Act contains a similar provision[3] and the Supreme Court concluded in *B & B Hardware, Inc. v. Hargis Indust., Inc.*, 575 U.S. 138 (2015) that issue preclusion could apply based on agency determinations.  *Id.* at 151 ("We conclude that nothing in the Lanham Act bars the application of issue preclusion in such cases.").  Thus, the similar Medicare provision cannot be used to overcome the presumption and a conclusion to the contrary, again, contradicts the Supreme Court.

Further, the Court erroneously concluded that the burden of showing the applicability of collateral estoppel to Medicare cases was on Plaintiff.  *See* Decision at 15 ("Without more, Plaintiffs have failed to demonstrate that it is appropriate to apply the doctrine of collateral estoppel on the basis of ALJ-level decisions in the Medicare context.").  Respectfully, that contradicts the Supreme Court's decision in *Green*.  As explained there, given the presumption, the burden is on the party contending that the common law principle of collateral estoppel does not apply (*i.e.*, the Secretary) to show that Congress did not intend so as reflected in the statute.  *Green*, 490 U.S. at

---

[3] *See* 15 U.S.C § 1123 ("The Director shall make rules and regulations, not inconsistent with law, for the conduct of proceedings in the Patent and Trademark Office under this chapter.").

5

621 ("A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change"). In this regard, again, the Secretary's regulations cannot override Congress' silence to abrogate the common law nor do they indicate anything about Congress' intent regarding collateral estoppel. Hence, this Court's reliance on them as being a reasonable exercise of the Secretary's general rulemaking authority is also manifest legal error. With the proper focus on what Congress intended and a proper application of the presumption that common law doctrines (like collateral estoppel) apply, the conclusion that collateral estoppel applies to Medicare cases is compelled. Plaintiff respectfully submits that the fundamental errors with regard to the presumption of collateral estoppel and the burden of proof appear to have caused the Court's analysis to proceed from the wrong perspective.

Moreover, the Court misapprehended the procedural facts of *Astoria* and how they relate to the present case. As discussed in *Astoria*, the Age Discrimination in Employment Act (ADEA) created by Congress includes a two-step approach to litigating discrimination claims. First, if the State where the claimant resides has its own age-discrimination law, the claimant must pursue his claim with the State before filing suit in federal court. *Astoria*, 501 U.S. at 111. Under the statute, the claimant may not file suit in federal court until 60 days after proceedings have been filed under the State law "unless such proceedings have been terminated earlier." *Id*. Therefore, a claimant must first pursue State remedies before filing suit in federal court on the *same claim based on the same conduct*. *B & B Hardware*, 575 U.S. at 152 (discussing *Astoria*, "then sued in court about the same alleged conduct"). Accordingly, it would be inconsistent with the filing requirements of the Act to give preclusive effect to the earlier State proceedings in the later federal litigation related to the *same claim*. Thus, the Supreme Court held that the filing requirements of the Act evidenced

6

a congressional intent to abrogate the presumption of collateral estoppel in this context. *Astoria*, 501 U.S. at 110-11.

By contrast, the present case concerns applying traditional principles of collateral estoppel across *different* claims. That is, Plaintiff contends that the Secretary is barred by collateral estoppel from denying Medicare coverage on the claim at issue as a result of the ALJ's final decisions on *different* claims. Again, the statute does not "speak directly" to changing the common law on this issue and, therefore, the presumption in favor of common law is not overcome.

Because of this Court's differing understanding of what claims were at issue/the procedural posture in *Astoria*, the Court's "strictly pro forma" quotation from *B & B Hardware* does not stand for the proposition cited by the Court. Decision at 14. As explained in *Astoria* and recounted in *B & B Hardware*, when state proceedings on a claim are a prerequisite to a federal action, the state proceedings *on the same claim* cannot give rise to collateral estoppel in the federal action of the *same claim*. However, the decisions on which collateral estoppel is based in this case are not for the same claim as the decision being appealed. Nevertheless, *B & B Hardware*'s focus on and analysis of the statutory content of the Lanham Act (rather than of the Patent and Trademark Office Director's regulations) to determine congressional intent illustrates the proper judicial analysis.

The Court's concern that if collateral estoppel were applied plaintiffs could obtain "declaratory judgments", somehow avoid the presentment requirement, or render judicial review "pro forma" is mistaken and appears to stem from the confusion about *Astoria* and which claims are the subject of collateral estoppel and judicial review. Decision at 14-15. If collateral estoppel is properly applied to Medicare cases, when a represented beneficiary's first claim is submitted, it would go through the regular claims process, including review by an ALJ and the MAC - if necessary. If the beneficiary is successful before an ALJ and the Secretary chose not to appeal the

7

decision, the decision would then become final. Likewise, if beneficiary is successful before the MAC, the decision would then become final. When subsequent claims are submitted, each would go through the regular claims process. At each stage (assuming no change in circumstances), the beneficiary would contend that the Secretary was bound by collateral estoppel based on the decision in the first case. If the beneficiary's claim was denied by an ALJ and then the MAC, the beneficiary could file suit in this Court, again, arguing collateral estoppel. In the first instance, this Court's review would be whether the elements of collateral estoppel are present. Thus, applying collateral estoppel would not avoid the claims process or constitute a declaratory judgment.

For the same reasons, this Court's attempt to distinguish the Supreme Court's analysis and holding in *B & B*, as "limited to TTAB decisions under the Lanham Act" is fundamentally incorrect. Unlike in *Astoria*, there is nothing in either *B & B Hardware* or this case that would "risk rendering judicial review … pro forma" (Decision at 14) because both involve different claims where the absence of further review on the first ruling was the choice of the estopped party. In *B & B Hardware*, the TTAB's decision which the Supreme Court held could give rise to collateral estoppel was itself never reviewed by any federal court. Notably, TTAB opposition decisions are subject to *de novo* review by Article III courts, either a district court or the Federal Circuit, yet the failure of Hargis to seek judicial review of the adverse TTAB decision did not foreclose application of collateral estoppel. *See* 575 U.S. at 160 (noting that district court adjudications of particular usages would clearly have preclusive effect in another district court and asking "Why would unchallenged TTAB decisions be different?"). Just as for the TTAB, the unchallenged and now-final Medicare coverage ALJ decisions should give rise to issue preclusion where, as here, "the ordinary elements of issue preclusion are met." *Id*. Hence, this Court's

concern that a court reviewing the second case or claim would be restricted from revisiting the merits of the unchallenged administrative decision is misplaced—avoiding such duplication of effort is the very purpose of the doctrine of collateral estoppel.

Moreover, judicial review of matters where collateral estoppel applies is not *pro forma*. Instead, those cases seek the application of the common law Congress is presumed to have legislated in reliance on and to obtain the benefits of the very purposes of collateral estoppel. In *B & B Hardware* and *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375 (7th Cir. 1984) collateral estoppel applied to preclude a full litigation on the merits in federal court and those cases were clearly not *pro forma*.

Further, the Court appeared to be under the erroneous impression that (because the Secretary chose not to appear before the ALJ hearing Mrs. Prosser's claim), matters in the prior decisions were not litigated "on the merits", "actually litigated", or that Mrs. Prosser was not put to her burden of proof. *See* Decision at 11-12. That is directly contradicted by the Record, the statute, and the regulations. *See*, *e.g.*, Exhibit K at 4 ("The burden of proving each element of a Medicare claim lies with [Mrs. Prosser] and is by a preponderance of the evidence (i.e., satisfied through the submission of sufficient evidence in accordance with Medicare rules).") (citing statues and regulations). Regardless of whether the Secretary chose to appear or not, Mrs. Prosser was put to her burden of proof and satisfied it in each of the favorable, final decisions on which collateral estoppel is based.

By contrast to a default judgment,[4] the Secretary both had the opportunity to appear and Plaintiff was put to her burden of proof and the risks and expense of meeting that burden. In such

---

[4] In a default, the plaintiff is not put to their burden of proof and the allegations of the Complaint are taken as true. *See, e.g., Quincy Bioscience, LLC v. Ellishbooks*, 957 F.3d 725, 729 (7Th Cir. 2020). As a result, normally, a default judgment cannot form the basis for collateral estoppel in a

9

a situation, a matter is "actually litigated" and decided on the merits. *See Restatement (Second) of Judgments* § 27 cmt. d (1982) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination and is determined, the issue is actually litigated."); *Matter of Garner*, 56 F.3d 677, 680 (5th Cir. 1996) (defendant who answered Complaint but did not otherwise appear, bound by collateral estoppel because plaintiff put to burden of proof). Thus, in the present case, the matter was "litigated on the merits"/"actually litigated" because Mrs. Prosser was put to her burden of proof and the risks and expense of meeting that burden. The Secretary's decision not to appear at the ALJ hearing only means that the Secretary relied on Mrs. Prosser having to meet that burden of proof as the Secretary's only defense.

Respectfully, the Court is incorrect in concluding that unappealed ALJ decisions are not "final" decisions of the Secretary or are merely "tentative" or are "not sufficiently firm." Decision at 10. Under the Secretary's own regulations and publications in the FEDERAL REGISTER, unappealed ALJ decisions are the "final decisions" of the Secretary and are not "tentative." Decision at 12. *See* 70 Fed.Reg. 36386-7 (June 23, 2005) ("The ALJ's within the Office of Medicare Hearings and Appeals issue the final decisions of the Secretary, except for decisions reviewed by the Medicare Appeals Council."); 42 C.F.R. §§ 405.1102 ("a written request for Council review [of an ALJ decision] within 60 calendar days"; 405.1114 ("The Council dismisses a request for review if the party requesting review did not file the request within the stated period of time and the time for filing has not been extended."). Whether the Secretary took advantage of his opportunity to appear at the ALJ hearings simply has no bearing on whether the decisions of the ALJs are "final."

---

subsequent action between the same parties relating to the same issues. *See, e.g., Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) ("a default judgment is normally not given preclusive effect under the collateral estoppel doctrine because no issue has been 'actually litigated'").

10

With regard to the number of ALJ appeals and alleged practicality of the Secretary to appear in them, this Court stated: "the court accepts that the even several thousand beneficiary appeals filed annually makes it virtually impossible for the Secretary to be represented at every ALJ-level hearing." Decision at 13. Respectfully, to the extent that this issue is relevant at all, the proper inquiry is: how many beneficiary' ALJ appeals are there each year where the beneficiary is represented? This is so because it is only in the context of a represented beneficiary that the Secretary has all the rights of a litigant to present evidence, etc. *See* Dkt. #9 at 7. On this issue, the Secretary offered no evidence of any kind. Instead, the Secretary represented to the Court that "over 400,00 Medicare claim appeals are filed each year at the ALJ level." *See* Dkt. #13 at 28. In her papers, Mrs. Prosser showed that the true number of ALJ appeals (of all types) filed last year was ~44,000 and that the number of beneficiary appeals is on the order of ~5,000. *See* Dkt. #16 at 7-8. However, as Plaintiff indicated, there is no information on the number of beneficiary appeals where the beneficiary is represented. *Id.* If only five beneficiaries, *e.g.*, were represented on appeal, it certainly would not be "virtually impossible" for the Secretary to appear. The same is true for 10, 20, etc. represented beneficiary appeals. Mrs. Prosser's point here is that there is simply no evidence to support the conclusion that it is "virtually impossible" for the Secretary to appear.

Reconsideration of the Court's July 6 Decision and Order should be granted.

## II. CERTIFICATION

Pursuant to 28 U.S.C. § 1292(b), this Court may certify an interlocutory order for immediate appeal if the Court believes that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion the resolution of which will materially advance the litigation. The invocation of § 1292(b) should be limited to "exceptional cases" in

which an appellate decision "may obviate the need for protracted and expensive litigation." *See Fed. Deposit Ins. Corp. v. First Nat. Bank of Waukesha, Wisc.*, 604 F.Supp. 616, 620 (E.D. Wisc. 1985).

Section 1292(b) presents four statutory requirements, which the party seeking certification bears the burden of showing: 1) there must be a question of law; 2) it must be controlling; 3) it must be contestable; and 4) its resolution must speed up the litigation. *See Ahrenholz v. Board of Trustees of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000). A district court has a "duty" to certify an order for immediate appeal if all of the criteria are met. *Id*. at 677.

### A. There is a Question of Law

As explained by the Seventh Circuit, "question of law" in the context of § 1292(b), "has reference to the meaning of a statutory or constitutional provision, regulation, or common law doctrine[.]" *Id.* at 676. Here, the Court's Order concerns the meaning of statutory provisions, regulations, and a common law doctrine.

### B. It is Controlling

In order to be a "controlling" question of law, the resolution of the issue must affect the course of the litigation. *See, e.g., DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 2009 WL 750278 (E.D. Wisc. March 20, 2009) (Griesbach, J.). Here, a decision on whether collateral estoppel applies will clearly affect the course of the litigation. If collateral estoppel applies, then the risks and expenses of full merits briefing will be avoided. Indeed, absent the application of collateral estoppel at this stage, then the very purposes of collateral estoppel will be rendered moot.

In addition to "controlling" in the present case, some courts consider whether resolution of the issue can contribute to the resolution of a wide spectrum of cases. *See Fed. Deposit*, 604 F.Supp. at 620. As this Court is aware, the issue of collateral estoppel and Medicare is currently

12

being litigated in cases across the country. In addition, as noted, each TTFT patient can result in multiple cases each year. Thus, resolution of the collateral estoppel issue would contribute to the resolution of a spectrum of cases.

### C. It is Contestable

Whether, as a matter of law, collateral estoppel can apply to Medicare cases is, at least, a matter that is contestable. While Mrs. Prosser believes that the instructions from the Supreme Court in multiple cases are clear, the Secretary disputes the point and (at first consideration) this Court has decided otherwise. At a minimum, Mrs. Prosser's position is a reasonable one and is based on the rulings of the Supreme Court. Thus, at a minimum, the issue is contestable.

### D. Resolution Would Speed Up the Litigation

Resolution of the collateral estoppel issue would speed up the litigation in that it would avoid the need for a full merits inquiry. In the absence of reconsideration or certification, this case will proceed with full briefing on the merits of the underlying litigation. That briefing will require both the parties and this Court to conduct a detailed review of the Record and to consider numerous legal arguments the resolution of which involve complex matters of law. One such matter, *e.g.*, is the application of the Supreme Court's recent decision in *Azar v. Allina Health Services*, 139 S.Ct. 1804 (2019). There, the Supreme Court held that the Medicare Act's notice and comment requirements (42 U.S.C. § 1395hh) rather than the Administrative Procedure Act's notice and comment requirements (5 U.S.C. § 553) applied to the Medicare program. Under the Medicare notice and comment provisions, notice and comment is required for "any rule, requirement, or other statement of policy" that "establishes or changes a substantive legal standard governing … the payment for services." When notice and comment is applicable, 60 day's notice (rather than

30 under the APA) is required. In the present case, the Secretary did not comply with the Medicare notice and comment requirements in issuing the LCD that was used to deny Mrs. Prosser's claim. This is just one of the complex issues this Court would be faced with. Thus, resolution of the collateral estoppel issue would speed up the litigation and avoid the very expense and uncertainties that collateral estoppel exists to avoid.

## CONCLUSION

For the reasons stated here, Plaintiff respectfully requests that the Court reconsider its July 6, 2020 decision, and grant summary judgment in favor of Ms. Prosser because the Secretary failed to rebut the presumption in favor of applying common law doctrines such as collateral estoppel in Medicare proceedings, because the Medicare statutes contain no basis for concluding that Congress intended for the common law doctrine of collateral estoppel to be abrogated in Medicare cases, and because all of the elements for applying collateral estoppel have indisputably been met based on Ms. Prosser's favorable rulings on the identical issues already fully and finally litigated in her separate Medicare claims.

In the alternative, Mrs. Prosser requests that the Court certify its Order under § 1292(b) for immediate appeal. Doing so would allow the Circuit court to resolve this important legal issue in an expeditious fashion without forcing Mrs. Prosser to suffer the very increased expense and uncertainties that collateral estoppel is intended to avoid.

Dated: July 20, 2020

Respectfully submitted,
PARRISH LAW OFFICES
*Attorneys for Plaintiffs*
By: James C. Pistorino
*(Admission to E.D. Wisconsin forthcoming)*
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
james@dparrishlaw.com

14

DAVIS & PLEDL, SC
*Attorneys for Plaintiffs*

/s/ Robert Theine Pledl

_____

By: Robert Theine Pledl
By: Victoria Davis Davila
1433 N. Water Street – Suite 400
Milwaukee, WI 53202
Telephone: (414) 488-1354
rtp@davisandpledl.com
vldd@davisandpledl.com