

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of Wisconsin*

*Federal Courthouse*           *(414)297-1700*
*517 E. Wisconsin Ave, Rm 530*     *TTY (414)297-1088*
*Milwaukee WI 53202*          *Fax (414) 297-4394*
                          *www.usdoj.gov/usao/wie*

October 8, 2020

The Honorable William C. Griesbach
Eastern District of Wisconsin
125 South Jefferson Street
Green Bay, WI 54301

       Re:     *Prosser v. Azar,* Case No.: 20-cv-194

Dear Judge Griesbach:

       Pursuant to Civil Local Rule 7(k), the Secretary is providing this Notice of Supplemental Authority. As set forth in the Secretary's motion for summary judgment, in *Komatsu v. Azar*, No. 8:20-cv-00280 (C.D. Cal. Sept. 24, 2020) and *Pehoviack v. Azar*, No. 8:20-cv-00661, 2020 WL 4810961 (C.D. Cal. July 22, 2020), two district judges dismissed plaintiffs' complaints for lack of standing. The plaintiffs in those cases appealed to the United States Court of Appeals for the Ninth Circuit. Ms. Komatsu's appeal was voluntarily dismissed after her death, and Ms. Pehoviack's appeal is scheduled for briefing later this year (Docket Number 20-55841, opening brief due October 26, 2020).

       In addition, in *Piekanski v. Aza*r, 3:20-cv-00687 (M.D. Pa.) a United States Magistrate Judge issued a report and recommendation on October 6, 2020, rejecting the Secretary's argument that the beneficiary lacks standing. (Report and Recommendation attached at pages 25–29.) The Secretary intends to file objections the report and recommendation by October 20, 2020. The Secretary has also raised the standing in three other pending cases—*Townsend v. Azar*, 20-cv-1210 (S.D.N.Y.), *Thumann v. Azar*, 20-cv-125 (S.D. Ohio), and *Wilmoth v. Azar*, 20-cv-120 (N.D. Miss.)—but has not yet received rulings.

                      Sincerely,

                      MATTHEW D. KRUEGER
                      United States Attorney

       By:     s/ Chris R. Larsen

                      CHRIS R. LARSEN
                      Assistant United States Attorney

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAUREEN PIEKANSKI,** | : | **Civil No. 3:20-CV-687** |
| | : | |
| **Plaintiff,** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ALEX M. AZAR, II,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction and Statement of the Case

This case comes before us for consideration of a number of dispositive motions, including a motion to dismiss filed by the defendant, Alex M. Azar, II, acting Secretary of the United States Department of Health and Human Services, and cross-motions for summary judgment. (Docs. 28, 34, 49). In this action, the plaintiff, Maureen Piekanski, who suffers from a particularly lethal form of brain cancer known as glioblastoma multiforme ("GBM"), brings an administrative appeal of an unfavorable decision of an Administrative Law Judge denying claims for Medicare coverage for tumor treating field therapy ("TTFT") provided to Piekanski from December 2017 through February 2018. The case is thus an appeal of a final decision of the Secretary of Health and Human Services regarding claims for reimbursement under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-

1

1395ggg. Specifically, this case involves claims for TTFT services, which are authorized under Part B of Title XVIII.[1] Part B benefits are supplemental medical insurance benefits that are available to beneficiaries who enroll and pay additional premiums. See 42 U.S.C. §§ 1395j, 1395k, 1395x(s); 42 C.F.R. Parts 407, 410.

This administrative appeal presents in a rather curious fashion: Piekanski is appealing an adverse decision of Administrative Law Judge Ryan Glaze ("ALJ Glaze"), who had issued an unfavorable decision denying reimbursement for TTFT services provided to Piekanski from December 2017 to February 2018. In his decision issued on January 18, 2019, ALJ Glaze effectively vacated a decision that had previously been issued by another administrative law judge, Administrative Law Judge Jeffrey Gulin ("ALJ Gulin"), on November 7, 2018 which allowed payment for TTFT services rendered to Piekanski in response to the same diagnosis and treatment plan for September, October, and November of 2017. On administrative appeal, the Medicare Appeals Council did not rule upon Piekanski's appeal within the 90-day timeframe prescribed by statute and thus granted an escalation request filed by Piekanski. This appeal followed.

---

[1] Part A of the Medicare program allows for payments primarily for institutional care. 42 U.S.C. §§ 1395c-1395i-4. In addition, Medicare consists of Part C, known as Medicare Advantage, 42 U.S.C. §§ 1395w-21-1395w-28, and Part D, which covers prescription drugs, 42 U.S.C. § 1395w-102. This case concerns only claims made for coverage under Part B.

2

On appeal, Piekanski argues that the decisions issued by ALJ Glaze and ALJ Gulin are conflicting and irreconcilable, and that ALJ Glaze erred by failing to consider ALJ Gulin's decision or the record taken in that initial administrative proceeding. Piekanski further argues that principles of res judicata or collateral estoppel should apply to the administrative decision in this case, and that ALJ Glaze should be bound by the findings and conclusions reached by ALJ Gulin since those findings and conclusions concerned the same diagnosis, the same treatment plan, and the same reimbursable services.

At bottom, Piekanski argues that it is fundamentally unfair to permit the Secretary to accept a final ruling on her claim for TTFT services provided in the fall of 2017, and then to relitigate substantially the same claims before a second ALJ, in a separate proceeding, where the issues had been fully litigated in the first proceeding, and where the issues in both administrative proceedings concerned the same diagnosis, the same treatment plan, and the same reimbursable services. For these reasons, Piekanski requests that we reverse the final decision of the Secretary and enter an order directing the Secretary to extend coverage for the TTFT services provided between December 2017 and February 2018.

In response, the Secretary maintains that there is nothing improper or unfair about the way in which he has proceeded in the administrative proceedings that followed Piekanski's request for payment for the TTFT services rendered. The

Secretary asserts that principles of res judicata and collateral estoppel are inapplicable to the administrative decisions at issue, and that Piekanski's arguments to the contrary are without merit. The Secretary further argues that Piekanski lacks standing to bring this lawsuit since ALJ Glaze's January 18, 2019 decision noted that the lack of an Advance Beneficiary Notice to Piekanski waived her liability for the cost of her treatment from December of 2017 through February of 2018, and thus, she lacks an injury in fact necessary for Article III standing. Accordingly, the Secretary requests that the Court affirm the agency's decision.

We have carefully considered the parties' respective positions in this case, and we have reviewed the extensive administrative record that has been submitted in connection with this appeal. Upon due consideration, although we agree with much of what the Secretary argues in his brief, we are left with serious concern that ALJ Glaze failed to give any meaningful consideration to the previous decision issued by ALJ Gulin—a decision that the Secretary accepted, and which became legally binding—in reaching a conclusion that was flatly contradictory to ALJ Gulin's ruling. Although we have some doubts that principles of res judicata or other rules of judicial finality prevent ALJ Glaze from independently considering the claims brought to him for adjudication, it is impossible to ignore the fact that the claims in this case all involve the same TTFT services (albeit over different dates), provided to the same beneficiary, in response to the same diagnosis. The first ALJ to consider

these claims concluded that these services were reasonable and necessary, and, therefore, fully reimbursable. By accepting this ruling—at least with respect to the claim considered by ALJ Gulin—the decision, therefore, became binding upon the Secretary.

Thereafter, ALJ Glaze was selected to review claims that involved the very same diagnosis, the same beneficiary, and the same resulting treatment for a three-month period immediately following the period covered in ALJ Gulin's decision, and he found that the services were neither reasonable nor necessary. In other words, he reached precisely the opposite conclusion from that reached by ALJ Gulin. In reaching this contrary conclusion, nothing in ALJ Glaze's decision gives us any reason to believe that ALJ Glaze gave meaningful consideration to ALJ Gulin's prior decision.

Given the factual and procedural backdrop to these administrative proceedings, we believe that it was necessary for ALJ Glaze to consider the prior decision of ALJ Gulin, and to explain clearly his reasons for accepting or rejecting ALJ Gulin's findings and conclusions. We are also unpersuaded by the Secretary's arguments that Piekanski lacks standing to bring her appeal in this case. Therefore, we will recommend that the district court deny the defendant's motion to dismiss and motion for summary judgment, but grant the plaintiff's motion for summary judgment. We will further recommend that the district court remand this case to ALJ

5

Glaze so that he may consider ALJ Gulin's prior decision in ruling on Piekanski's claim for benefits based on treatments provided in December of 2017 through February of 2018.

## II.   **Background**

### A.   **The Medicare Program**

Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg, pays for covered medical care that is provided to eligible aged and disabled individuals. The case before the Court involves claims made under the Act for TTFT services, which are authorized under Part B of Title XVIII. Part B benefits are supplemental medical insurance benefits that are available to beneficiaries who enroll and pay additional premiums. See 42 U.S.C. §§ 1395j, 1395k, 1395x(s); 42 C.F.R. Parts 407, 410.

Within the Department of Health and Human Services ("HHS"), the Center for Medicare and Medicaid Services ("CMS") administers the Medicare program for the Secretary. As part of its administration of the program, CMS contracts with private entities, known as Medicare administrative contractors, in order to perform certain Medicare functions. 42 U.S.C. § 1395u. In addition to other functions relating to Part B services, Medicare contractors determine whether claimed services are medically reasonable and necessary, calculate the amount of Medicare Part B payments that are due, and pay claims out of Medicare Trust Funds. See 42 U.S.C. §§ 1395u(a)(1)(A) and (b); 42 C.F.R. §§ 424.53, 424.55.

6

**B.** <u>**TTFT Services**</u>

Tumor treating field therapy ("TTFT") was developed to interfere with cancer cell reproduction in patients with GBM through the use of alternating electrical fields. (Doc. 28-15, at 11). Patients wear a device delivering these alternating electric fields on their head to slow the spread of GBM and increase both the length and rate of survival for these patients. (<u>Id.</u>) TTFT entered the market for treatment of GBM in April of 2011 when the United States Food and Drug Administration approved the NovoTTF-100A device (later rebranded as Optune) for the treatment of recurrent GBM. (Def. SMF, ¶ 1; AR at 2506). This device is manufactured and supplied by Novocure, which provided the TTFT services at issue to Piekanski in this case. (<u>Id.</u>)

In August of 2014, the Medicare Administrative Contractors for Durable Medical Equipment ("DME MACs") issued its first Local Coverage Determination ("LCD") for the Optune device. (Def. SMF, ¶ 2; AR at 2506). This LCD "determined that, based on the strength and quality of the evidence available at that time, TTFT was not reasonable and necessary for the treatment of GBM." (<u>Id.</u>) This LCD remained in effect until 2018 when Novocure requested that the DME MACs approve Medicare coverage for TTFT services for newly diagnosed GBM. (Def. SMF, ¶ 4). This request was accepted in September of 2019 when the existing LCD was revised to allow Medicare coverage for newly diagnosed GBM and continued coverage for newly diagnosed GBM beyond the first three months of treatment in

7

certain circumstances. (Def. SMF, ¶ 5; AR at 2501-02). LCDs are not binding upon ALJs, but LCDs are entitled to substantial deference if they are applicable to a given case. See 42 C.F.R. § 405.1062.

### C.   Factual Background to the Instant Appeal

Maureen Piekanski was diagnosed with glioblastoma multiforme in 2011 and underwent surgery and chemo-radiation the same year. (Doc. 27, ¶ 19). She then began using the Optune device in August of 2011 and has continued treatment with this device for the past nine years. (Id.) Piekanski is eligible for Medicare and sought reimbursement for the cost of her TTFT treatments every few months beginning, on this record, in September of 2017. (Id., ¶ 28). We are presented with five decisions of the administrative law judges tasked with determining whether Medicare coverage was appropriate for the TTFT services that Piekanski received.[2]

The first of these decisions was issued in November of 2018 by ALJ Jeffrey Gulin. (Doc. 28-4, Ex. A). ALJ Gulin found that Piekanski's TTFT treatments

---

[2] We note that, of these five decisions, only two are relevant to this appeal. Specifically, the focus of this report and recommendation is on the opinions of ALJ Gulin and ALJ Glaze since ALJ Gulin's decision was the first issued on this record and ALJ Glaze's decision forms the basis of this appeal. The other decisions in the record for this case were issued after ALJ Glaze's January 2019 decision, and thus were not part of the administrative record at the time of this decision. We note, however, that every decision on the record since ALJ Glaze's January 2019 decision, including another decision rendered by ALJ Glaze himself some nine months later, resulted in a favorable outcome for Piekanski since her TTFT treatments were held to be eligible for Medicare coverage. (See Doc. 28, Exs. A, C, D, E, F).

provided from September to November of 2017 were eligible for Medicare coverage despite the LCD in effect at the time which recommended otherwise. (Id.) ALJ Gulin recognized that he was obligated to give substantial deference to the LCD, but likewise noted that he was not bound by its guidance. (Id.) In ruling on Piekanski's appeal, ALJ Gulin found that "studies from the FDA and new literature from the medical community since the LCD was first issued show the treatment is beneficial to patients such as [Piekanski] and is medically reasonable and necessary." (Id., at 10). In addition, ALJ Gulin was persuaded by the fact that the FDA had discontinued its initial study regarding TTFT treatments for patients with recurrent GBM since there were findings that it would be inhumane to deny control patients access to TTFT treatments. (Id., at 11). Moreover, ALJ Gulin found that electric field therapy had been included in the National Comprehensive Cancer Network ("NCCN") guidelines for treatment with standard brain radiation therapy. (Id.) Finally, ALJ Gulin recognized that Piekanski had been using the treatment for seven years and that the otherwise relevant LCD was subject to a reconsideration request. (Id.) Based on the addition of "evidence showing acceptance and use in the medical community for the diagnosis at issue as documented by studies and articles in the record[,]" ALJ Gulin found coverage of Piekanski's treatments appropriate and issued a favorable ruling. (Id.)

In contrast, some two months later, ALJ Ryan Glaze issued an unfavorable coverage determination with respect to TTFT treatments provided from December of 2017 to February of 2018, the three-month period immediately following that at issue in ALJ Gulin's decision. (Doc. 28-6, Ex. C). ALJ Glaze found that Piekanski had not been newly diagnosed with GBM and had been

> undergoing maintenance TTFT with MRI surveillance from 2013 through 2017 when, by October 4, 2017, there was radiographic evidence as compared to her two previous MRIs that there was likely recurrence and/or progression. The use of Optune TTFT for recurrent glioblastoma has only a category 2B recommendation from the NCCN, and by the manufacturer's own words, indicated for use after chemotherapy, as monotherapy, and "intended as an alternative to standard medical therapy for GBM after surgical and radiation options have been exhausted." Here, TTFT continued to be used as maintenance therapy during the dates of service at issue without evidence of other treatment options having been trialed, as suggested by the manufacturer and the NCCN.

(Id., at 11) (citation omitted). Thus, ALJ Glaze found that the record evidence was "insufficiently persuasive to overcome the substantial deference" owed to the LCD effective at the time. (Id.)

In making his determination, ALJ Glaze did not consider the decision of ALJ Gulin, despite the fact that Piekanski had included this decision in her brief before ALJ Glaze and the fact that this decision was part of the administrative record in this case. (See Doc. 28-5, at 8-22). Indeed, there is no mention of ALJ Gulin's decision anywhere in ALJ Glaze's opinion. Moreover, there is no mention of any of the

evidence used by ALJ Gulin supporting his decision to extend Medicare coverage to Piekanski's treatments, despite its availability in January of 2019.

Curiously, on September 13, 2019, ALJ Glaze once again had the opportunity to consider Piekanski's request for Medicare coverage of her TTFT treatments, this time for treatments received from June through August of 2018. (Doc. 28-7, Ex. D). Rather than deny coverage for Piekanski's treatments, as he had done before, since they were the same treatments provided to the same beneficiary pursuant to the same plan of treatment, this time ALJ Glaze determined that Piekanski's GBM was "newly diagnosed." (Id., at 11). Because there was no LCD directly on point for newly diagnosed GBM, the generalized acceptance in the medical community "supported by sound medical evidence based on scientific data or research studies in published, peer-reviewed medical journals, consensus of expert medical opinion, or medical opinion derived from consultations with medical associations or other health care experts" controlled the outcome of ALJ Glaze's September 2019 decision. (Id., at 10).

Specifically, ALJ Glaze found that:

In this case, the appellant has provided evidence which clearly establishes TTFT is safe and effective for its intended use in patients with newly diagnosed GBM. The record contains documentation showing the device received FDA pre-market approval for patients with recurrent GBM in April 2011, and pre-market approval for patients with newly diagnosed glioblastoma in October 2015. While pre-market approval from the FDA does not establish that the device is reasonable and necessary pursuant to Medicare requirements, the approvals do

ensure that the FDA determined sufficient scientific evidence exists to
show the device was safe and effective for its intended use in patients
with newly-diagnosed GBM.

In 2018, the National Comprehensive Cancer Network (NCCN)
Guidelines . . . were updated to include alternating electric field therapy
(TTFT) as an NCCN category I recommendation following post-
operative standard brain radiation therapy with concurrent
temozolomide.

Furthermore, the record contains peer-reviewed literature showing that
tumor treating fields disrupt the cell division process in cancerous
tumors which may lead to programmed cell death. Tumor treating fields
have also shown statistically significant improvement in patient
survival rates and outcomes in GBM brain tumors when compared with
the traditional standard of care alone. Moreover, the documentation
supports general acceptance by the medical community supported by
sound medical evidence based on scientific data or research studies in
published, peer-reviewed medical journals.

(Id.) (citations and footnote omitted). On the basis of these facts, ALJ Glaze

determined that Medicare coverage was appropriate for Piekanski's TTFT

treatments from June through August of 2018. (Id., at 11).

We cannot help but note the curious shift that occurred in the approximately

nine months in 2019 between ALJ Glaze's two contradictory opinions that

concerned the same beneficiary, the same treatment plan, and the same treatments

provided. While we recognize that ALJ Glaze's September 2019 decision was not

yet issued at the time of his January 2019 decision, his September decision casts

doubt and confusion onto his initial January decision, the subject of the appeal in

this case. Specifically, in January of 2019, ALJ Glaze determined that Piekanski was

receiving maintenance treatments for recurrent GBM, yet, some nine months later, he determined that Piekanski had been newly diagnosed with GBM and was receiving treatments that were medically necessary and supported by the medical evidence in the record. Perhaps more confusing is the fact that the research, medical evidence, and clinical studies that ALJ Glaze cited in September were available in January of 2019 when his first decision was issued, and were, in fact, cited in ALJ Gulin's decision which had been issued in November of 2018.

On the basis of these facts, Piekanski filed the instant lawsuit alleging violations of 42 U.S.C. § 405(g) and 5 U.S.C. §§ 706(1), 2(A), 2(C), 2(D), and 2(E), seeking an award of Medicare coverage for her TTFT treatments from December 2017 through February 2018 previously denied by ALJ Glaze. The defendant has filed a motion to dismiss in this case and both parties have filed cross-motions for summary judgment which are ripe for disposition. (Docs. 28, 34, 49). Based on our thorough review of the record, we find that Piekanski has standing to bring this lawsuit under 42 U.S.C. § 405(g), and the defendant's motion to dismiss should accordingly be denied. In addition, we find that ALJ Glaze's January, 2019 decision was not supported by substantial evidence since he failed to consider ALJ Gulin's prior decision granting coverage which was presented to him within the administrative record. Therefore, we will recommend that the plaintiff's motion for

summary judgment be granted, and the defendant's motion for summary judgment be denied.

## III.   <u>Discussion</u>

### A.   <u>Motion to Dismiss – Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u>, at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>, at 678. Rather,

15

in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to

16

state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar.

17

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B.    Motion for Summary Judgment – Standard of Review

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality."

Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla

of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon

bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985) (citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, <u>Anderson</u>, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. <u>Id.</u> Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Big Apple BMW</u>, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

### C.   Social Security Act Standards of Review

The Social Security Act expressly provides for limited judicial review of the Secretary's final decision over Medicare claims. See 42 U.S.C. § 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)); see also 42 U.S.C. § 1395mm(c)(5)(B) (providing that in the case of an adverse decision where the amount in controversy is $1,000 or more, the aggrieved party is entitled to judicial review of the Secretary's final decision as provided in 42 U.S.C. § 405(g)). Section 405(g) authorizes a court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a hearing." As part of this review, "[a]ppellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the . . . decision is not supported by substantial evidence." Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). In contrast, in accordance with section 405(g), the Secretary's final decision must be upheld if the decision is supported by substantial evidence of record. See Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Burns v. Barnhart, 312

F.3d 113, 118 (3d Cir. 2002) (review of administrator's decision regarding supplemental security income).

The Third Circuit has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson, 402 U.S. at 401). Furthermore, a district court considering an appeal of a final decision of the Secretary must not conduct a *de novo* review of the Secretary's decision, or re-weigh evidence of record. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Instead, if the findings of fact in the underlying administrative decision are supported by substantial evidence, they are conclusive on review. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

In determining whether a finding is supported by substantial evidence in the record, the district court must review the record as a whole. See 5 U.S.C. § 706; Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 431 (3d Cir. 1999); see also Mercy Home Health v. Leavitt, 436 F.3d 370, 377 (3d Cir. 2008) (citing to 42 U.S.C. § 1395oo(f)(1) for the proposition that judicial review of reimbursement decisions under the Act shall be made pursuant to the Administrative Procedures Act, 5 U.S.C. § 706)). In reviewing that record, a generic statement that the ALJ considered all of the evidence in the record is not sufficient if the decision fails to explain the rejection of probative evidence that was contrary to the conclusion

reached. <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir. 1994); <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981).

Thus, the ALJ's decision must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for any decision. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Com. of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999). Accordingly, a single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). In attempting to determine whether an ALJ's decision is supported by substantial evidence, the reviewing court may look at any evidence in the record, regardless of whether the ALJ cites to the evidence in his decision. <u>See</u> <u>Hook v. Bowen</u>, 677 F. Supp. 305, 306 (M.D. Pa. 1988). When an ALJ decision neglects to adequately address material

facts in a way which permits meaningful judicial review, remand the case for further,

fuller consideration by the ALJ of the undeveloped matters is both necessary and

appropriate for fully informed decision-making.

### D.    Piekanski has Standing to Bring this Lawsuit.

The parties agree that "[t]he relevant statute here is 42 U.S.C. § 405(g), which

authorizes a beneficiary to appeal a final decision of the Secretary to federal court."

(Doc. 35, at 11) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)).

Despite this agreement, the defendant nevertheless argues that Piekanski lacks

standing to pursue this appeal. We gather that the defendant believes that Piekanski

is statutorily permitted to appeal final determinations of the Secretary, but that these

appellate rights do not confer standing to be heard on the merits of her appeal.[3]

---

[3] "Plaintiff has exercised her right to file under section 405(g), and there is no allegation that the Secretary interfered with her ability to file this lawsuit. Accordingly, there is no statutory violation, much less a concrete injury." (Doc. 35, at 11). In addition, the Secretary argues that Piekanski has not suffered a concrete injury because she cannot be held personally liable for the cost of her treatments regardless of the outcome in this case. On this score, the Secretary states that the ALJ specifically found that Piekanski would not be personally liable for the cost of her treatments since she was not provided an Advance Beneficiary Notice before she received treatment. Therefore, her treatment provider, rather than Piekanski herself, will be financially liable for the cost of her treatments from December 2017 through February 2018. Because "if Plaintiff prevails, the Secretary will not pay her a penny[, and i]f Plaintiff loses, she will not owe the Secretary a penny[,]" the Secretary asserts that Piekanski lacks Article III standing to maintain this lawsuit. (Id.)

25

We disagree. In this case, were we to accept the Secretary's argument, we would be ignoring the mandate of section 405(g). This statutory section provides, in pertinent part, that:

> ***Any*** individual, after ***any*** final decision of the Commissioner of Social Security made after a hearing to which he [or she] was a party, ***irrespective of the amount in controversy***, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him [or her] of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides[.] . . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g) (emphasis added). Nothing in this statute, which the parties agree controls the appeal in this case, appears to strip Piekanski of standing. Indeed, there is no dispute that Piekanski was a party to the administrative hearing held in this case or that the decision of the Secretary had become final before Piekanski filed her appeal to this court. Thus, Piekanski is permitted to appeal her case to this court and have a decision rendered on the merits "irrespective of the amount in controversy[.]" 42 U.S.C. § 405(g). In our view, the plain language of this statute, which the Secretary agrees controls this appeal, permits an appeal of a final administrative decision even where the amount in controversy is nothing. Moreover, even if the amount in controversy is nothing, the statute grants this court the "power to enter . . .

26

a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id.

It is well established that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3 (1973). In addition, "[m]any cases focus on the question of whether Congress truly intended to create a private right of action and whether a particular individual was in the 'zone of interests' of the statute. But traditionally, once it was clear that Congress intended to create an enforceable right and that an individual falls into the 'zone of interests' that individual was found to have standing." In re Horizon Healthcare Servs. Data Breach Litig., 846 F.3d 625, 635, n.13 (3d Cir. 2017) (citing FEC v. Akins, 524 U.S. 11, 20 (1998)). Furthermore, the United States Court of Appeals for the Third Circuit has held that:

> in deciding whether standing exists to challenge administrative action under a federal statutory scheme, the statute itself must be scrutinized to determine whether Congress has expressed an intent to circumscribe the class of plaintiffs that may initiate an action:
>
>> Although the precise limits of Congressional power over federal jurisdiction are not clearly drawn, it is settled law that Congress can in legislating confide certain decisions to the discretion of administrative officials, prohibiting judicial review of the correctness of those decisions. Similarly, subject to due process dictates, Congress can provide for administrative action and limit to a specified class the right to seek judicial review. Thus, where administrative action is challenged as violative of a statute,

27

federal courts must ascertain whether Congress has prohibited or
provided for "review at the behest of the plaintiff."

Davis v. Romney, 490 F.2d 1360, 1364 (3d Cir. 1974) (emphasis
added) (citations omitted).

New Jersey Speech-Language-Hearing Ass'n v. Prudential Ins. Co., 724 F.2d 383,

386 (3d Cir. 1983).

In our view, from the face of the statute which undisputedly controls the

appeal in this case, it is clear that Congress intended petitioners like Piekanski to

have standing to appeal administrative decisions like the one at issue here. Section

405(g) explicitly provides for judicial review of administrative decisions and only

limits those who can seek review to a class of individuals who have received a "final

decision of the Commissioner of Social Security made after a hearing to which he

[or she] was a party[.]" 42 U.S.C. § 405(g). We find that Piekanski fits within this

class of individuals that Congress intended by section 405(g) to be able to maintain

a lawsuit that a district court could decide on the merits by "a judgment affirming,

modifying, or reversing the decision of the Commissioner of Social Security, with

or without remanding the cause for a rehearing." Id. Thus, we recommend that the

defendant's motion to dismiss on lack of standing grounds be denied.[4]

---

[4] While we believe that the statute directly confers standing upon Piekanski in this
case, we note the Government argues that Article III of the United States
Constitution requires more for standing and demands that "a plaintiff must show that
he or she suffered 'an invasion of a legally protected interest' that is 'concrete and
particularized' and 'actual or imminent, not conjectural or hypothetical.' " Spokeo,

28

E.   **ALJ Glaze's Failure to Address ALJ Gulin's Contrary Decision
Causes his Decision Not to be Supported by Substantial Evidence,
and Warrants Remand for Further Administrative Proceedings.**

Having determined that Piekanski has standing to proceed, we now turn to the
merits of her appeal. Reduced to its essence, Piekanski's appeal represents
essentially one overarching complaint: ALJ Glaze's January 2019 decision is
inconsistent and irreconcilable with the conclusions reached in ALJ Gulin's ruling,
which authorized the reimbursement for the TTFT services provided to Piekanski
between September and November of 2017 to treat Piekanski's diagnosis of
gliblastoma multiforme. Piekanski casts this argument as one predicated either

---

Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) (quoting Lujan, 504 U.S., at 560)
(internal quotation marks omitted). The Government then suggests that under this
constitutional benchmark, Piekanski lacks standing to bring this action challenging
the contradictory and conflicting agency decisions regarding her cancer treatment
because she has received some assurances that she will not be billed for these
contested treatment expenses.

We disagree. We find that standing exists here to challenge this decision under the
Government's proposed Article III standard. Contrary to the Government's
suggestion, Piekanski's concerns are not conjectural or hypothetical. She is battling
a deadly form of brain cancer while attempting to navigate a complex regulatory
reimbursement system relating to her treatment for this grave disease. That
bureaucratic system has cast doubt over her entitlement to benefits for essential
treatment for a specific period of time in a decision which we find lacks a coherent
articulated rationale. As she fights for her life, she is also trying to reconcile these
contradictory and irreconcilable agency rulings regarding whether her critical care
is reimbursable. Her concerns on this score are real, concrete, and particularized. She
need not rely solely upon past assurances that she may not be billed for these
services, and these assurances do not strip her of standing, since she has a clear
statutory right to adjudicate her entitlement to these benefits. Nothing more is needed
to confer standing.

29

simply on the failure to consider the prior decision, or as one grounded in judicial principles of finality such as res judicata, collateral estoppel, or even the law of the case doctrine.

We have some question as to the application of formal principles of res judicata and related judicial rules of finality to this particular administrative dispute, where the administrative law judges who considered Piekanski's claims were presented with different claims for service over different periods, but where the claims were all predicated on the same diagnosis and plan of treatment. The Court of Appeals for the Third Circuit has held that "[r]es judicata principles apply to administrative as well as judicial adjudications." Tobak v. Apfel, 195 F.3d 183, 186 (3d Cir. 1999) (citing United States v. Utah Constr. & Mining Co., 384 U.S. 394, 421-22 (1966)). However, "res judicata may only be properly applied to preclude a subsequent claim for disability benefits where the 'same' claimant has filed a previous application based on the 'same' issues and where such prior determination has become final by virtue of administrative or judicial action." Tobak, 195 F.3d at 186 (citing 20 C.F.R. § 404.957(c)(1); Purter v. Heckler, 771 F.2d 682, 691 (3d Cir. 1985)).

We also recognize that there have been decisions from outside the Third Circuit in which appellate courts have found that in the context of administrative proceedings concerning disability benefits, a claimant may in some cases invoke res

judicata to bind subsequent ALJs to the findings and decisions of a previous ALJ.
See Drummond v. Comm. of Soc. Sec., 126 F.3d 837 (6th Cir. 1997); Lively v.
Secretary of Health and Human Services, 820 F.2d 1391, 1392 (4th Cir. 1987)
("[The] fundamental and familiar principles of res judicata apply in Social Security
cases.").[5] Notwithstanding these decisions, however, we are unaware of any
precedential decision issued by the Third Circuit that has held that res judicata
applies to ALJ decisions regarding Medicare reimbursement claims specifically. We
have, however, identified at least two non-precedential decisions that cast some
doubt on the application of res judicata in this context, at least when new evidence
is presented in a subsequent administrative proceeding, or where the passage of time
is deemed relevant to the application of a prior administrative decision. In Carter v.
Barnhart, a disability benefits case, the Third Circuit held that:

> The affirmative defense of res judicata did not bind [the ALJ in the
> second decision] because that record contained new evidence that was
> unavailable to [the first ALJ], and because the relief sought was limited
> to a determination that he was disabled from July 1999, instead of May
> 1995 as alleged in the earlier application. In light of the difference of
> four years between the alleged onset date of disability in Carter's

---

[5] In a subsequent decision, the Fourth Circuit clarified Lively by explaining that
Lively was not based upon res judicata, but instead on "principles of finality and
fundamental fairness . . . ." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d
473, 477 (4th Cir. 1999). The court further explained that a prior determination of
the Commissioner in a disability benefits case is not conclusive with respect to a
claimant's condition, and the Commissioner may subsequently reach a different
conclusion if there is substantial evidence of an improvement in the claimant's
condition. Id. Thus, the Fourth Circuit explained that Lively is "best understood as
a practical application of the substantial evidence rule." Id.

31

second and third application, there was no reason to reopen the earlier application.

Carter v. Barnhart, 133 F. App'x 33, 35 (3d Cir. 2005) (internal citation omitted).

The Third Circuit reached a similar conclusion in Clark v. Barnhart where the court held that "findings by the previous ALJ in 1996 does not prove that [the claimant] has an impairment that prevented him from engaging in any substantial gainful activity which lasted for twelve months prior to October 2002." Clark v. Barnhart, 206 F. App'x 211, 214-15 (3d Cir. 2006). The United States District Court for the Eastern District of Pennsylvania, in considering an argument that res judicata should apply to bind the Commissioner in a subsequent administrative proceeding, found that a number of courts within and outside of the Third Circuit have adhered to the reasoning in Carter and Clark in declining to find res judicata applicable:

> In McGill v. Barnhart, the district court held that "res judicata does not apply when two distinct periods of time are at issue," rejecting a plaintiff's argument that the findings in a 1998 decision should have bound the ALJ in a 2000 decision. McGill v. Barnhart, Civ. A. No. 01-5257, 2003 U.S. Dist. LEXIS 7671, *18-19 (E.D. Pa. Apr. 22, 2003). Likewise, in McAllister v. Chater, the district court found that a finding of an ALJ in 1985 that a claimant was limited to sedentary work did not bind an ALJ in a 1994 adjudication. McAllister v. Chater, Civ. A. No. 93-217-SLR, 1997 U.S. Dist. LEXIS 4183, *31-35 (D. Del. 1997). Other Courts of Appeals [have] reasoned similarly. See, e.g., Rucker v. Chater, 92 F.3d 492 (7th Cir. 1996) (distinguishing Lively and holding that collateral estoppel did not bind a subsequent ALJ to earlier findings when the two decisions were separated by four years); Albright v. Comm. of the SSA, 174 F.3d 473 (4th Cir. 1999).

Zavilla v. Astrue, Civ. A. No. 09-133, 2009 U.S. Dist. LEXIS 96369, *38-39 (W.D. Pa. Oct. 16, 2009).

Although we appreciate that the foregoing cases concern claims for social security disability benefits, rather than claims for Medicare reimbursement, we do find the decisions to be illustrative and relevant to our consideration of Piekanski's assertion that res judicata principles apply in this case. However, although we believe that the case before the Court, and the inconsistent decisions at issue, are readily distinguishable from the foregoing cases, we find it unnecessary to reach a conclusion as to whether res judicata properly applies in this context. We reach this conclusion because ALJ Glaze's total failure to address ALJ Gulin's previous decision addressing claims for reimbursement for the same services, to the same beneficiary, for the same diagnosis undermines ALJ Glaze's subsequently issued ruling, and causes us to find that decision is not supported by substantial evidence.

Regardless of whether ALJ Gulin's findings and conclusions were binding in any way upon ALJ Glaze—and we acknowledge the Secretary's arguments that they should not be—they were nevertheless made part of the record in this case, and, therefore, merited consideration by ALJ Glaze. See Soli v. Astrue, Civ. A. No. 08-3483, 2010 U.S. Dist. LEXIS 73826, *31-32 (E.D. Pa. July 22, 2010) (remanding social security disability appeal because, *inter alia*, second ALJ failed to consider first ALJ's findings regarding plaintiff's mental impairment, and as a result the

33

second ALJ decision was found to be not supported by substantial evidence); Zavilla v. Astrue, Civ. A. No. 09-133, 2009 U.S. Dist. LEXIS 96369, *38-39 (W.D. Pa. Oct. 16, 2009) (finding that prior inconsistent ALJ decision needed to be considered by second ALJ, and observing that "[w]hile decisions of government agencies are not binding . . . they may be entitled to substantial weight and must be considered.") (citing Kane v. Heckler, 776 F.2d 1130 (3d Cir. 1985)). It is a fundamental principle of administrative law that "[a]ppellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the . . . decision is not supported by substantial evidence." Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). In this case, we find, like the district courts in Soli and Zavilla, that ALJ Glaze's failure to discuss, or even mention, ALJ Gulin's decision in this case, and in this particular context, undermines his decision and causes us to find that it is not supported by substantial evidence.

Approximately two months after ALJ Gulin had issued his decision, ALJ Glaze issued his own decision, which did not even acknowledge ALJ Gulin's decision, or discuss its potential relevance to the claims that had been presented before ALJ Glaze. Although there may have been good and sound reasons for ALJ Glaze to have reached conclusions contrary to those reached by ALJ Gulin regarding the same diagnosis and treatment for which Piekanski sought reimbursement, we find it impossible to rule fairly on whether ALJ Glaze's decision is supported by

34

substantial evidence in light of the omission of any reference to ALJ Gulin's earlier ruling in ALJ Glaze's decision.

Moreover, ALJ Glaze's subsequent decision in September of 2019 casts additional doubt upon his earlier rationale denying the claims at issue in this case. Specifically, in January of 2019, ALJ Glaze determined that Piekanski was receiving maintenance treatments for recurrent GBM, yet, some nine months later, he determined that Piekanski had been newly diagnosed with GBM and was receiving treatments that were medically necessary and supported by the medical evidence in the record. Perhaps more confusing is the fact that the research, medical evidence, and clinical studies that ALJ Glaze cited in September were available in January of 2019 when his first decision was issued, and were, in fact, cited in ALJ Gulin's decision which had been issued in November of 2018. In short, the two decisions by ALJ Glaze are marked by apparent internal inconsistencies. More is needed here.

Because we are unable to conclude that ALJ Glaze's ruling is supported by substantial evidence, we will recommend that the District Court reverse the final ruling of the Secretary and remand this matter to ALJ Glaze for further consideration of Piekanski's claims in accordance with the observations set forth in this report and recommendation.

Finally, because we recommend that this case be resolved on its merits in favor of the plaintiff, Piekanski's motion to strike, (Doc. 58), should be dismissed as moot.

## IV.  **Recommendation**

For the foregoing reasons it is RECOMMENDED that the defendant's motion to dismiss, (Doc. 34), be DENIED. IT IS FURTHER RECOMMENDED that the plaintiff's motion for summary judgment, (Doc. 28), be GRANTED, and the defendant's motion for summary judgment, (Doc. 49), be DENIED. Finally, IT IS RECOMMENDED that the plaintiff's motion to strike, (Doc. 58),  be DISMISSED as moot.

The parties are hereby placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations, or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

36

witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of October, 2020.

                    *S/Martin C. Carlson*
                    Martin C. Carlson
                    United States Magistrate Judge